

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 1 9 2013

CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on Sept. 19. 2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 87882-0 |
| | ) | |
| v. | ) | EN BANC |
| | ) | |
| JEFFREY THOMAS LYNCH, | ) | Filed: SEP 1 9 2013 |
| | ) | |
| Petitioner. | ) | |
| | ) | |

FAIRHURST, J.—The State charged Jeffrey Thomas Lynch with indecent liberties and second degree rape. At trial, Lynch's defense to the rape charge was that the State failed to prove forcible compulsion because the alleged victim, T.S., consented to the sexual intercourse. Over Lynch's objection, the trial court instructed the jury that Lynch had the burden to prove consent by a preponderance of the evidence. The jury found Lynch guilty of the crimes charged. The Court of Appeals affirmed Lynch's second degree rape conviction but reversed the indecent liberties conviction. We hold that the trial court violated Lynch's Sixth

Amendment right to control his defense by instructing the jury on the affirmative

defense over Lynch's objection and that such error was not harmless.

## FACTS AND PROCEDURAL HISTORY

The State charged Lynch with second degree rape and indecent liberties after

T.S. reported to the police that Lynch had forcibly penetrated her vagina with his

finger and placed her hand on his penis. These incidents allegedly took place

during the middle of the night at Lynch's apartment after Lynch and T.S. had

fallen asleep on the couch while watching a movie. Although T.S.'s young son and

a friend of T.S.'s were asleep in an adjacent bedroom, there were no witnesses to

the alleged crimes besides T.S. and Lynch. T.S. claimed that she physically and

verbally resisted Lynch's advances but that Lynch overpowered her. Lynch

admitted that he digitally penetrated T.S.'s vagina but claimed that T.S. consented

to his conduct. Lynch denied ever forcing T.S. to place her hand on his penis.

Lynch's case proceeded to a jury trial. At the conclusion of trial, the court

gave the following jury instruction at the State's request:

> A person is not guilty of RAPE or INDECENT LIBERTIES if
> the sexual intercourse or sexual contact is consensual. Consent means
> that at the time of the act of sexual intercourse or sexual contact there
> are actual words or conduct indicating freely given agreement to have
> sexual intercourse or sexual contact.
>
> The defendant has the burden of proving that the sexual
> intercourse or sexual contact was consensual by a preponderance of
> the evidence. Preponderance of the evidence means that you must be
> persuaded, considering all of the evidence in the case, that it is more

2

probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty.

Clerk's Papers at 66. Lynch objected to the consent instruction on the grounds that he had the right to control his defense and because he did not want to bear the burden of proving consent. Lynch argued that he introduced evidence that T.S. had consented in order to create a reasonable doubt about whether the State had proved the element of forcible compulsion.

The jury found Lynch guilty on both charges. After the trial court denied Lynch's motion for a new trial, Lynch appealed the guilty verdicts and certain community custody conditions imposed in his judgment and sentence. In an unpublished opinion, the Court of Appeals affirmed in part and reversed in part and remanded. *State v. Lynch*, noted at 170 Wn. App. 1001 (2012). The Court of Appeals affirmed the second degree rape conviction but reversed the indecent liberties conviction. The Court of Appeals also vacated the community custody conditions that Lynch contested and remanded for further proceedings. Lynch sought review by this court to address the errors assigned to his second degree rape conviction. Neither Lynch nor the State sought review of the Court of Appeals' reversal of the indecent liberties conviction or vacation of the community custody conditions. We granted review. *State v. Lynch*, 176 Wn.2d 1016, 298 P.3d 704 (2013).

ISSUES

A.    Did the trial court violate Lynch's Sixth Amendment right to control his defense by instructing the jury on the affirmative defense of consent over Lynch's objections?

B.    Is the constitutional error harmless?

ANALYSIS

"We review allegations of constitutional violations de novo." *State v. Siers*, 174 Wn.2d 269, 273-74, 274 P.3d 358 (2012) (citing *State v. Vance*, 168 Wn.2d 754, 759, 230 P.3d 1055 (2010)).

A.    *Did the trial court violate Lynch's Sixth Amendment right to control his defense by instructing the jury on the affirmative defense of consent over Lynch's objections?*

The Sixth Amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . ., and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

Implicit in the Sixth Amendment is the criminal defendant's right to control his defense. *See Faretta v. California*, 422 U.S. 806, 819, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) ("Although not stated in the [Sixth] Amendment in so many words, the right . . . to make one's own defense personally [] is thus necessarily implied by the structure of the Amendment."); *State v. Jones*, 99 Wn.2d 735, 740, 644 P.2d 1216 (1983) ("*Faretta* embodies 'the conviction that a defendant has the right to decide,

within limits, the type of defense he wishes to mount.'" (quoting *United States v. Laura*, 607 F.2d 52, 56 (3d Cir. 1979))). The defendant's right to control his defense is necessary "to further the truth-seeking aim of a criminal trial and to respect individual dignity and autonomy." *State v. Coristine*, 177 Wn.2d 370, 376, 300 P.3d 400 (2013).

"Instructing the jury on an affirmative defense over the defendant's objection violates the Sixth Amendment by interfering with the defendant's autonomy to present a defense." *Id.* at 375; *see also Jones*, 99 Wn.2d at 739 (trial court violated defendant's right to control his defense by forcing the defendant to enter a not guilty by reason of insanity plea and appointing amicus counsel to argue the insanity defense over defendant's objections); *State v. McSorley*, 128 Wn. App. 598, 605, 116 P.3d 431 (2005) (trial court violated defendant's right to control his defense by instructing the jury on an affirmative defense to the crime of child luring over defendant's objection).

This court's recent decision in *Coristine* is dispositive in resolving this case. In *Coristine*, the State charged Brandon Coristine with second degree rape after he had sexual intercourse with L.F. after L.F. had been drinking at a party at Coristine's house. The State charged Coristine under RCW 9A.44.050(1)(b), which states that a person is guilty of second degree rape if the "victim is incapable of consent by reason of being physically helpless or mentally incapacitated."

Coristine's trial strategy throughout the case was to show that the State failed to prove that L.F. was physically helpless or mentally incapacitated during sexual intercourse.

At the close of evidence, the trial court in *Coristine* held an instruction conference to decide whether it should instruct the jury on the affirmative defense of reasonable belief. *See* RCW 9A.44.030(1). Under RCW 9A.44.030(1), a defendant is not guilty of second degree rape if the defendant "reasonably believed" that the alleged victim was not mentally incapacitated or physically helpless. The defendant has the burden of proving reasonable belief by a preponderance of the evidence. *Id.* At the instruction conference, the State argued that the court was *required* to give the instruction because Coristine had "'bolster[ed]' his case by offering '. . . additional evidence' that the victim was not incapacitated." *Coristine*, 177 Wn.2d at 374 (first alteration in original) (quoting 3 Verbatim Report of Proceedings at 395). Coristine objected to the instruction because he did not want the burden of proof. Coristine "reiterated his failure-of-proof defense, arguing that testimony from defense witnesses about L.F.'s alcohol consumption and behavior at the party cast doubt on the State's allegation that L.F. was physically helpless or mentally incapacitated during sexual intercourse." *Id.* at 374-75.

The trial court instructed the jury on the reasonable belief affirmative defense over Coristine's objections, and the jury found Coristine guilty. The Court of Appeals affirmed. This court reversed the Court of Appeals, holding that "[t]he Sixth Amendment right to control one's defense encompasses the decision to present an affirmative defense." *Id.* at 376. We reasoned, "Imposing a defense on an unwilling defendant impinges on the independent autonomy the accused must have to defend against charges." *Id.* at 377.

In this case, the trial court violated Lynch's Sixth Amendment right to control his defense by instructing the jury on the affirmative defense of consent over Lynch's objections. Like Coristine, Lynch attempted to cast doubt on an element of the State's case—the element of forcible compulsion. Also like Coristine, Lynch objected to the affirmative defense instruction because he did not want the burden of proof. By "[i]mposing a defense on an unwilling defendant," the trial court "impinge[d]" Lynch's autonomy to conduct his defense. *Id.* The State argues that the consent instruction was justified because Lynch introduced evidence that T.S. consented. But in *Coristine*, we rejected a similar argument made by the State that evidence presented by Coristine bolstering his case somehow justified instructing the jury on an affirmative defense. In accordance with *Coristine*, we hold that the trial court violated Lynch's Sixth Amendment

right to control his defense by instructing the jury on the affirmative defense of consent over Lynch's objection.

B.    *Is the constitutional error harmless?*

"[I]f trial error is of constitutional magnitude, prejudice is presumed and the State bears the burden of proving it was harmless beyond a reasonable doubt." *Id.* at 380 (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). "[A] violation of the defendant's right to control his own defense may be subject to review for harmless error." *Id.* (citing *Jones*, 99 Wn.2d at 748).

The State argues that any constitutional error was harmless because "there was no inconsistency between the consent instruction and the defense Lynch advanced with respect to second-degree rape." Br. of Resp't at 17. Contrary to the State's argument, however, instructing the jury that Lynch had the burden of proving consent *was* inconsistent with Lynch's trial strategy of casting doubt on the element of forcible compulsion. The consent instruction imposed a burden on Lynch that was greater than the burden necessary to create a reasonable doubt about forcible compulsion. *See Martin v. Ohio*, 480 U.S. 228, 234, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987) (noting that evidence creating a reasonable doubt about an element of a crime "could easily fall far short" of proving a defense by a preponderance of the evidence).

Even if we accepted the State's argument that there was "no inconsistency" between the instruction and Lynch's defense, this fact alone is not enough to prove harmless error. Br. of Resp't at 17. In *Coristine*, we held that the State failed to prove harmless error in part because "[a] deprivation of [a defendant's right to control his defense] is error even if the trial court's instructions in the law are a model of accuracy." 177 Wn.2d at 381. We further stated, "[I]f seizing control over a defendant's trial strategy were harmless so long as the court correctly instructed the jury in the defense it chose, little would remain of the Sixth Amendment right to control one's defense." *Id.* We acknowledge that the consent instruction, derived from 11 *Washington Practice: Washington Pattern Jury Instructions Criminal* 18.25 (3d ed. 2011), was an accurate statement of the law. This court even approved the use of a similar instruction in a similar context in *State v. Gregory*, 158 Wn.2d 759, 801, 147 P.3d 1201 (2006). Under *Coristine*, however, giving such an instruction over a defendant's objection violates the defendant's right to control his defense regardless of the instruction's accuracy.

In a similar vein, the State argues that any error was harmless "because the consent instruction did not come into play until the jury had evaluated whether the State established its burden of proof." Br. of Resp't at 18-19. The State seems to be arguing that the consent instruction was harmless because the instruction regarding the State's burden (to prove all the elements of the crimes beyond a reasonable

doubt) was accurate. In support of its assertion, however, the State offers nothing more than the conclusory statement that "the jury would have found Lynch guilty of both crimes regardless of the consent instruction." *Id.* at 19. The State fails to prove that instructing the jury on an affirmative defense over Lynch's objections was harmless beyond a reasonable doubt.

## CONCLUSION

The trial court violated Lynch's Sixth Amendment right to control his defense when it instructed the jury on the affirmative defense of consent over Lynch's objections. The State fails to prove that this error was harmless beyond a reasonable doubt. We reverse the Court of Appeals to the extent it held that the trial court did not violate Lynch's right to control his defense. We vacate Lynch's second degree rape conviction and remand for a new trial. Because we reverse on Sixth Amendment grounds, it is not necessary to decide whether the consent instruction impermissibly shifted the burden of proof to Lynch in violation of the Fourteenth Amendment.

Fairhurst, J.

WE CONCUR:

Stephens, J.

González, J.

No. 87882-0

GORDON McCLOUD, J. (concurring)—The majority is correct that "the trial court violated [Jeffrey] Lynch's Sixth Amendment right to control his defense by instructing the jury on the affirmative defense over Lynch's objection." Majority at 1-2. The majority is also correct that such a Sixth Amendment error is subject to harmless error review and that this error was not harmless. *Id.* at 2, 8. The reason the instruction caused so much harm, though, is not just that it was unwanted. The major harm was caused by the fact that the unwanted instruction was itself unconstitutional. As the majority states, "The consent instruction imposed a burden on Lynch that was greater than the burden necessary to create a reasonable doubt about forcible compulsion." *Id.* at 8 (citing *Martin v. Ohio*, 480 U.S. 228, 234, 107 S. Ct. 1098, 94 L. Ed. 2d 267 (1987)).

In fact, that unwanted instruction impermissibly shifted the burden on that element away from the State and on to Mr. Lynch. Such impermissible shifting of

the burden of proof is a Fourteenth Amendment due process clause problem. The source of that problem is this court's decisions in *State v. Camara*, 113 Wn.2d 631, 781 P.2d 483 (1989) and *State v. Gregory*, 158 Wn.2d 759, 147 P.3d 1201 (2006). It is now clear that those two decisions conflict directly with United States Supreme Court precedent interpreting the due process clause. They also misconstrue the legislative intent embodied in Washington's rape laws. *Camara* and *Gregory* are therefore incorrect and harmful and should be overruled.

I.    Due Process

Jeffrey Lynch was charged with indecent liberties and second degree rape. The statutes under which he was convicted define those crimes as "sexual contact"[1] and "sexual intercourse,"[2] respectively, "[b]y forcible compulsion."[3] The trial court instructed the jury that Lynch "ha[d] the burden of proving that the sexual intercourse or sexual contact was consensual by a preponderance of the evidence." Clerk's Papers (CP) at 66. Lynch maintains that this instruction violated the due process clause of the Fourteenth Amendment by relieving the prosecution of its duty to prove the element of "forcible compulsion."

---

[1] RCW 9A.44.100(1)(a) (defining the crime of indecent liberties).
[2] RCW 9A.44.050(1)(a) (defining the crime of second degree rape).
[3] RCW 9A.44.050(1)(a), .100(1)(a).

Mr. Lynch is correct that the due process clause of the Fourteenth Amendment prohibits a State from convicting any defendant unless the prosecution has proved beyond a reasonable doubt every element of the crime charged. *In re Winship*, 397 U.S. 358, 360-61, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Because this rule "is concerned with substance rather than . . . formalism," a State may not lessen the prosecutorial burden by characterizing as an *affirmative defense* (which the defendant must prove by a preponderance) a fact that simply negates an essential element of the offense. *Mullaney v. Wilbur*, 421 U.S. 684, 699, 704, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). To do so would be to presume the existence of a fact necessary for conviction.

While a State may not burden a defendant with disproving an element of the crime charged, it may require a defendant to prove the existence of mitigating factors. In *Patterson v. New York*, 432 U.S. 197, 207, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), the Court held that a defendant could be burdened with proving such a factor, as long as it "does not serve to negative any facts of the crime." The *Patterson* Court's primary concern was to permit state legislatures to recognize mitigating circumstances (by codifying affirmative defenses) without thereby

increasing the prosecutorial burden.[4] To this end, it upheld a statute requiring a defendant charged with second degree murder to prove that the defendant had "acted under the influence of extreme emotional disturbance." *Id*. at 206. In doing so, however, the *Patterson* Court cautioned that there are "constitutional limits" on the State's authority to "reallocate burdens of proof":

> This [decision] may seem to permit state legislatures to reallocate burdens of proof by labeling as affirmative defenses at least some elements of the crimes now defined in their statutes. But there are obviously constitutional limits beyond which the States may not go in this regard. "[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime."

*Id*. at 210 (quoting *McFarland v. Am. Sugar Ref. Co.*, 241 U.S. 79, 86, 36 S. Ct. 498, 60 L. Ed. 899 (1916) (second alteration in original)).

The Court revisited these "constitutional limits" 10 years later in *Martin*, 480 U.S. 228. In that case, the Court applied *Patterson*'s holding to a statute that required defendants charged with aggravated murder to prove that they had acted in self-defense. The *Martin* Court upheld the statute, reasoning that "the elements of aggravated murder and self-defense overlap [only] in the sense that evidence to prove the latter will *often* tend to negate the former." *Id*. at 234 (emphasis added).

---

[4] *See Patterson*, 432 U.S. at 209 ("To recognize at all a mitigating circumstance does not require the State to prove its nonexistence in each case in which the fact is put in issue, if in its judgment this would be too cumbersome, too expensive, and too inaccurate.").

Essential to the Court's holding was the fact that because self-defense *could* coexist with "a purposeful killing by prior calculation and design" (the elements of aggravated murder under Ohio law), "Ohio does not shift to the defendant the burden of disproving any element of the state's case." *Id.*

The overwhelming majority of courts that have considered the issue, interpret *Patterson* and/or *Martin* as holding that a court violates the due process clause of the United States Constitution if it requires a defendant to prove any fact that necessarily negates an element of the crime charged.[5]

---

[5] The following jurisdictions interpret *Patterson*, 432 U.S. 197, or *Martin v. Ohio*, 480 U.S. 228, to hold that a court violates due process if it requires a defendant to prove any fact that negates an element of the crime charged: *United States v. Prather*, 69 M.J. 338, 342-43 (C.A.A.F. 2011); *United States v. Moore*, 397 U.S. App. D.C. 148, 651 F.3d 30, 89 (2011); *United States v. Leahy*, 473 F.3d 401, 409 (1st Cir. 2007); *United States v. Deleveaux*, 205 F.3d 1292, 1298-1300 (11th Cir. 2000); *United States v. Unser*, 165 F.3d 755, 764 (10th Cir. 1999); *United States v. Dodd*, 225 F.3d 340, 344 (3d Cir. 2000); *United States v. Toney*, 27 F.3d 1245, 1250-51 (7th Cir. 1994); *Gov't of Virgin Islands v. Smith*, 949 F.2d 677, 680-83 (3d Cir. 1991); *Holloway v. McElroy*, 632 F.2d 605, 625, 626 n.33, 628 (5th Cir. 1980), *overruled on other grounds by Baker v. Montgomery*, 811 F.2d 557 (11th Cir. 1987); *State v. Drej*, 2010 UT 35, ¶ 14, 233 P.3d 476, 481 (2010); *State v. Powdrill*, 95-2307, (La. 11/25/96); 684 So. 2d 350, 355; *Barone v. State*, 109 Nev. 778, 858 P.2d 27, 28-29 (1993); *State v. Baker*, 154 Vt. 411, 579 A.2d 479, 481 (1990); *State v. Charlton*, 338 N.W.2d 26, 30-31 (Minn. 1983); *Ward v. State*, 438 N.E.2d 750, 753 (Ind. 1982); *State v. Schulz*, 102 Wis. 2d 423, 307 N.W.2d 151, 155-56 (1981); *Commonwealth v. Hilbert*, 476 Pa. 288, 297, 382 A.2d 724 (1978); *In re Doe*, 120 R.I. 732, 739-40, 390 A.2d 920 (1978). By contrast, only two jurisdictions have adopted the view that the prosecution has no constitutional duty to disprove an element-negating defense. *See Smart v. Leeke*, 873 F.2d 1558, 1565 & n.9 (4th Cir. 1989); *Hobgood v. Housewright*, 698 F.2d 962, 963 (8th Cir. 1983).

This court interpreted *Martin* in *Camara*, 113 Wn.2d 631, where the defendant, like Lynch, faced a second degree rape charge. Camara, like Lynch, challenged a jury instruction because it implied that he had to affirmatively prove that his alleged victim consented to sexual intercourse. *Id.* at 635. Camara maintained that the instruction impermissibly shifted the burden of proof, since it could lead a reasonable juror to believe that he or she had to convict unless Camara *disproved* the State's allegation of forcible compulsion. *Id.*

This court rejected Camara's claim, even though it appeared to agree that consent "negates" the forcible compulsion element of a rape charge. It affirmed Camara's conviction because it interpreted *Martin* to hold that the question whether an affirmative defense "negates" an element of the charged crime lacked constitutional significance. *Camara*, 113 Wn.2d at 640.

In reaching that conclusion, this court modified the two-part test (derived from *Patterson*) that it had previously used to determine whether a defendant could be burdened with proving a defense. *Camara*, 113 Wn.2d at 638 (quoting *State v. McCullum*, 98 Wn.2d 484, 490, 656 P.2d 1064 (1983) (quoting *Patterson*, 432 U.S. at 210)). Under the *Patterson*-derived test, this court asked first whether the legislature *intended* to equate an element of the crime with the "absence" of the defense in question and second whether any element of the defense in question *in*

*fact* negated an element of the crime. *Id.* An affirmative answer to either question meant that the State bore the burden of disproving the defense:

> "There are two ways to determine if the absence of a defense is an ingredient of the offense: (1) the statute may reflect a legislative intent to treat absence of a defense as one 'of the elements included in the definition of the offense of which the defendant is charged'; or (2) one or more elements of the defense may 'negate' one or more elements of the offense which the prosecution must prove beyond a reasonable doubt."

*Camara*, 113 Wn.2d at 638 (quoting *McCullum*, 98 Wn.2d at 490 (quoting *Patterson*, 432 U.S. at 210)).

Applying the first prong of the test, the *Camara* court concluded that Washington's legislature had intentionally shifted the burden of proof on consent to the defendant when it reformed the State's rape statutes in 1975. *Id.* at 638-39. Turning to the second prong, it concluded that under *Martin*, due process protections are not offended simply because a defendant is required to "negate" an element of the crime charged:

> Following *Martin*, it appears that assignment of the burden of proof on a defense to the defendant is not precluded by the fact that the defense "negates" an element of a crime. Thus, while there is a conceptual overlap between the consent defense to rape and the rape crime's element of forcible compulsion, we cannot hold that for that reason alone the burden of proof on consent must rest with the State.

*Camara*, 113 Wn.2d at 640. In reaching this conclusion, the *Camara* court conflated affirmative defenses that "overlap" an element of the charged crime, such as *Martin* addressed, with those that "negate" an element of the crime, such as *Mullaney* addressed. It interpreted *Martin* to cast "substantial doubt" on the propriety of what it termed "this 'negates' analysis"—the second prong of the *Patterson*-derived test—and declined to apply that analysis at all to Camara's appeal. *Id.* Seven years later, this court reaffirmed *Camara* in *Gregory*, 158 Wn.2d at 803. The *Gregory* court stated that "the *Martin* analysis clearly supports the *Camara* court's conclusion."[6]

---

[6] *Gregory*, 158 Wn.2d at 803. Two Justices disagreed with the *Gregory* majority's reading of *Martin* and wrote separately to argue that the court should have overruled *Camara*:

> Consent is the reciprocal opposite of forcible compulsion. . . . Allen Gregory now asks us to overrule *Camara*, arguing that *Camara* misconstrued *Martin*. I agree with Gregory and would overrule *Camara*.

> . . . .

> . . . [I]n the context of first degree rape, forcible compulsion (an element of the offense) is absolutely incompatible with consent. The two cannot coexist. . . . *Camara* was wrongly decided and harmfully so because it allows an unconstitutional shifting of the burden of proof. It should be overruled.

*Id.* at 868-69 (Sanders, J., concurring in result).

8

This reading of *Martin* was highly questionable when *Camara* was decided, and has survived in only a small minority of jurisdictions.[7] Indeed, even this court continued to apply both prongs of the "negates analysis" after *Camara*, despite purportedly rejecting its constitutional prong in that case.[8]

Today, there is no question that *Camara*'s reasoning conflicts with United States Supreme Court precedent. In *Smith v. United States*, __ U.S. __, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013), the Court clarified that the prosecution must always bear the burden of disproving a defense that controverts an element of the charged crime:

> The State is foreclosed from shifting the burden of proof to the defendant only "when an affirmative defense *does* negate an element of the crime." *Martin v. Ohio*, 480 U.S. [at 237] (Powell, J., dissenting). Where instead it "excus[es] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to

---

[7] *See supra* note 5, listing the jurisdictions that interpret *Patterson* and/or *Martin* to hold that prosecution has a constitutional duty to disprove any affirmative defense that negates an element of the crime charged.

[8] *See, e.g., State v. Deer*, 175 Wn.2d 725, 734 & n.5, 287 P.3d 539 (2012) ("It is generally recognized that the defendant bears the burden of proving an affirmative defense by a preponderance of the evidence. The sole exception is when a defense 'negates' an element of the charged offense, in which case due process requires the State to bear the burden of disproving the defense." (footnote omitted)), *cert. denied*, 133 S. Ct. 991 (2013); *State v. Lively*, 130 Wn.2d 1, 11, 921 P.2d 1035 (1996) ("If a statute indicates an intent to include absence of a defense as an element of the offense, or the defense negates one or more elements of the offense, the State has a constitutional burden to prove the absence of the defense beyond a reasonable doubt.").

overcome the defense beyond a reasonable doubt. *Dixon v. United States*, 548 U.S. 1, 6, 126 S. Ct. 2437, 165 L. Ed. 2d 299 (2006).

*Smith,* 133 S. Ct. at 719 (second alteration in original).

If *Martin* created any doubts as to the constitutional distinction between defenses that "excuse" a crime (or "overlap" an element), on the one hand, and those that "negate" an element of the crime charged, on the other, *Smith* resolved those doubts. The State may burden a defendant with proving a defense that "excuses" the crime or that "overlaps" one of its elements, but the State may not burden a defendant with proving a defense that "negates" an element. *Camara* and its progeny are inconsistent with that rule.[9]

II.     Washington's Rape Statute

---

[9] That consent logically "negates" that the element of forcible compulsion is amply demonstrated by the questions Lynch's jury submitted during its deliberations:

> [The instructions seem] contradictory re: burden of proof law. (1) *State* needs to prove beyond reasonable doubt re: 2nd degree rape charge . . . The *defendant* has the burden of proof re: that the sexual intercourse or sexual contact was consensual.

> Does the defendant bear the burden of proving that indecent liberties *did not* occur?

> Do we assume that indecent liberties occurred unless the evidence shows us otherwise?

CP at 47.

The *Camara* court based its decision in part on the legislative history of our State's rape statutes. It concluded that Washington's 1975 rape statute reforms were intended to burden the defense with proving consent. *Camara,* 113 Wn.2d at 639. This conclusion is incorrect.

As support for this conclusion, the *Camara* court cited only a brief passage from a law review article, which noted that Washington's 1975 reform law emphasized the perpetrator's conduct, rather than the victim's reaction:

> [W]e believe the removal from the prior rape statute of language expressly referring to nonconsent evidences legislative intent to shift the burden of proof on that issue to the defense. This conclusion finds support in the history and purposes of rape law reform:
>
> > The new law channels the jury's focus, via instructions, on the culpability of the actor rather than the response of the victim. . . . The reform statutes announce society's interest in accurately identifying perpetrators of rape, not in reinforcing traditional assumptions regarding appropriate behavior of [virtuous] [men and] women.

*Id.* at 638-39 (citations omitted) (alterations in original) (quoting Wallace Loh, *The Impact of Common Law and Reform Rape Statutes on Prosecution: An Empirical Study,* 55 WASH. L. REV. 543, 557 (1980)).

The *Camara* court's reasoning misrepresents both our legislature's intent and Professor Wallace Loh's widely cited article on the 1975 reforms.[10] The history of those reforms, which Loh's article covers at length, reveals that they were not intended to remove nonconsent as an element of rape.

A. Statutory Construction

At the outset, it should be noted that resort to the legislative history of Washington's rape laws, while informative, is not necessary to interpret the provisions under which Lynch was charged. The purpose of statutory interpretation is "'to determine and give effect to the intent of the legislature.'" *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (quoting *State v. Sweany*, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)). "When possible, we derive legislative intent solely from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, and the statutory scheme as a whole." *Id.* (citing *State v. Ervin*, 169 Wn.2d 815, 820, 239 P.3d 354 (2010)). "Plain language that is not ambiguous does not require construction." *Id.* (citing *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003)). Read in context, the second

---

[10] *See infra* Part II.B 1-3.

degree rape statute under which Lynch was charged is not ambiguous; it plainly excludes language that would burden the defendant with proving consent.

This is clear from the structure of chapter 9A.44 RCW, which covers sex offenses. Four provisions of that chapter expressly recognize affirmative defenses to rape and other sex offenses. RCW 9A.44.050(1)(d) makes consent an affirmative defense to second degree rape when "the perpetrator is a health care provider, the victim is a client or patient, and the sexual intercourse occurs during a treatment session, consultation, interview, or examination." RCW 9A.44.100(1)(d) provides an identical defense for health care providers charged with indecent liberties. RCW 9A.44.030, which is titled "defenses to prosecution under this chapter," codifies several "reasonable belief" defenses to prosecutions in which "lack of consent is based solely upon the victim's mental incapacity or . . . physical[] helpless[ness]" or in which "the offense or degree of the offense depends upon the victim's age." Finally, RCW 9A.44.180 provides that it is an affirmative defense to a charge of custodial sexual misconduct that "the act of sexual intercourse or sexual contact resulted from forcible compulsion by the other person."

Outside of these four provisions, chapter 9A.44 RCW contains no reference to any affirmative defense. "[T]he legislature is deemed to intend a different

meaning when it uses different terms," *State v. Roggenkamp*, 153 Wn.2d 614, 625, 106 P.3d 196 (2005) (citing *State v. Beaver*, 148 Wn.2d 338, 343, 60 P.3d 586 (2002)), and a "court will not read into [a] statute the language that it believes was omitted," *State v. Moses*, 145 Wn.2d 370, 374, 37 P.3d 1216 (2002) (citing *Jenkins v. Bellingham Mun. Court*, 95 Wn.2d 574, 579, 627 P.2d 1316 (1981)). In accordance with these rules, where the legislature includes particular language in one section of a statute but omits it in another, the exclusion is presumed intentional. *Red Lion Hotels Franchising, Inc. v. MAK, LLC*, 663 F.3d 1080, 1089-90 (9th Cir. 2011) (quoting *Kucana v. Holder*, 558 U.S. 233, 249, 130 S. Ct. 827, 838, 175 L. Ed. 2d 694 (2010)). In chapter 9A.44 RCW, Washington's legislature expressly provided for affirmative defenses to five specific categories of offense.[11] Our legislature chose not to codify any affirmative defenses to the crime of sexual intercourse or contact by forcible compulsion. The rules of statutory interpretation prohibit this court from reading in an affirmative defense that the legislature elected to omit.

---

[11] These categories are (1) second degree rape where the perpetrator is the victim's health care provider and the sexual intercourse occurs during a treatment session, RCW 9A.44.050(1)(d); (2) indecent liberties occurring during a treatment session, RCW 9A.44.100(1)(d); (3) offenses in which lack of consent is based solely upon the victim's mental incapacity or physical helplessness, RCW 9A.44.030(1); (4) offenses defined in terms of the victim's age, RCW 9A.44.030(2), (3); and (5) custodial sexual misconduct, RCW 9A.44.180.

### B. Legislative History

While the plain language of chapter 9A.44 RCW suffices to resolve the issue, the history of rape law reform in Washington also supports the conclusion that our legislature did not intend to burden a defendant with proving consent where that defendant was charged with sexual contact or intercourse by forcible compulsion. On the contrary, the history of rape law reform in Washington indicates that our legislature has always regarded nonconsent as an essential element of sexual intercourse or contact by forcible compulsion.[12]

Washington's rape law reform originated in efforts to revise the State's entire criminal code in 1967, but was ultimately accomplished separately, by a consortium of women's groups focused exclusively on the rape statutes. Loh, *supra*, at 568-69. The most instrumental member of this consortium was the Seattle Women's Commission (SWC), but several other groups participated in lobbying efforts, including the National Organization for Women (NOW), the Washington State Women's Council, and representatives from rape crisis centers.

---

[12] Forcible compulsion is an element of rape in the first degree, RCW 9A.44.040(1); rape in the second degree, in RCW 9A.44.050(1)(a); and indecent liberties, in RCW 9A.44.100(1)(a).

*Id.* at 570 & n.151.[13] Reform advocates shared two primary objectives: first, to address an alarming increase in the incidence of rape and second, to remove certain barriers to prosecution that resulted in "an extremely low percentage of [rape] convictions." *Fact Sheet on Bill to Revise Present Rape Law* at 1, S.B. 3173, 43d Leg., 3d Ex. Sess. (Wash. 1974) (on file with Wash. State Archives).[14]

In all, four different rape law reform bills were proposed between 1974 and 1975.[15] The first of these bills to be introduced, Senate Bill 3173, would have made nonconsent an express element of rape:

> Sec. 3. (1) Whether or not specifically stated, it is an element of rape that the sexual act was committed without consent of the victim.
>
> (2) Lack of consent results from:

---

[13] *See also* Written Testimony of Jean Marie Brough, Legislative Coordinator for Seattle NOW, to the S. Judiciary Comm. (Aug. 3, 1974) (on proposed S.B. 3173) (on file with Wash. State Archives).

[14] *See also* Seattle Women's Comm'n, *A Study on Rape in the City of Seattle* at 4-6 (1974) (on file with Wash. State Archives); Written testimony from Seattle NOW, *supra* note 13; Deborah Fleck, Intern for H. Judiciary Comm., *Is There a Need for Revision of the Washington State Rape Law?* (1974) (on file with Wash. State Archives). According to Professor Loh, reform efforts by the SWC were also initially inspired by the appearance of a bill proposed by the Washington Legislative Council's Judiciary Committee, which would have required corroboration of a rape victim's testimony. Loh, *supra*, at 568, 570. Washington's pre-reform rape statute had no such corroboration requirement. *Id.* at 568.

[15] S.H.B. 208, 44th Leg., Reg. Sess. (Wash. 1975); S.B. 2196, 44th Leg., Reg. Sess. (Wash. 1975); S.B. 2198, 44th Leg., Reg. Sess. (Wash. 1975); S.B. 3173, 43d Leg., 3d Ex. Sess. (Wash. 1974).

> (a)  Forcible compulsion; or
>
> (b)  Use of threat; or
>
> (c)  If the offense is rape in the third degree, lack of manifestation of consent; or
>
> (d)  Incapacity.

S.B. 3173, 43d Leg., 3d Ex. Sess. (Wash. 1974). Senate Bill 3173 was drafted by the SWC, whose then-Vice-President Jackie Griswold coauthored the reform bill that was ultimately enacted in 1975.[16]

Under some circumstances, the legislature's failure to enact an amendment may be seen as a rejection of the amendment's substance. *State v. Schwab*, 103 Wn.2d 542, 551-52, 693 P.2d 108 (1985). In the absence of other relevant evidence, this court might infer from the legislature's failure to enact Senate Bill 3173 that lawmakers considered and rejected consent as an element of rape. In this case, however, such an inference is unwarranted. "[T]he fact or happenstance of successive drafts" is not "an absolute determinant" of legislative intent, and presumptions based on that sequence may be negated by other evidence. *Hama Hama Co. v. Shorelines Hr'gs Bd.*, 85 Wn.2d 441, 449-50, 536 P.2d 157 (1975) (emphasis omitted); *see also State v. Martin*, 94 Wn.2d 1, 19, 614 P.2d 164 (1980).

---

[16] *Comparison of Existing Rape Law and Proposed SB 3173 (Seattle Womens Commission)*, 43d Leg., 3d Ex. Sess. (Wash. 1974) (on file with Wash. State Archives); Loh, *supra*, at 570 n.153.

17

With respect to Washington's rape laws, the totality of the relevant evidence overwhelmingly supports the conclusion that our legislature did not intend to exclude nonconsent as an element of forcible sexual contact.

The legislative record contains numerous letters, memoranda, testimonies, news articles, and other documents detailing the debates and discussions that led to the 1975 rape law reforms. *See infra* Parts II.B. 1-4. These documents nowhere indicate any legislative intent to exclude "consent" as an element of rape. [17] Rather, they reveal the legislature's significant investment in three other reforms: (1) the repeal of language implying that a victim's physical "resistance" was an element of rape, (2) the enactment of limits on the admissibility of evidence

---

[17] *See Materials on Proposed Revisions of the Laws Relating to Sexual Crimes*, S.B. 2198, 44th Leg., 2d Ex. Sess. (Wash. 1975) (on file with Wash. State Archives) (listing the "Major Issues" underlying reform debates). Indeed, where the concept of "consent" does appear in the legislative record, it is always treated as a question central to any rape prosecution. *See, e.g.,* S.B. 2196 and the Committee Amendment to S.B. 2198—*Revising the Law on Rape—A Discussion of Section 2*, 44th Leg., 2d Ex. Sess. (Wash. 1975) (on file with Wash. State Archives) ("The bill as originally presented . . . would make the past sexual behavior or reputation of the complainant inadmissible on the issue of her credibility or on the issue of consent. . . . A consent to intercourse with one person does <u>not</u> constitute a consent, or even a likelihood of consent to intercourse with other persons. If the word "consent" means anything, then it implies discretion and choice—and the right to *not* consent."); Written testimony of Jackie Griswold, Vice-President, SWC (1974) (discussing proposed S.B. 3173) (on file with Wash. State Archives) ("In courtroom practice, much of the victim's past life may be scrutinized in the attempt to show that she consented to a single, specific act. Such practice so extends the meaning of the word <u>consent</u> as to make it meaningless."); Seattle Women's Comm'n, *supra* note 14, at 5 ("We believe that the issue of consent should be determined solely from the victim's words and conduct at the time of the charged incident.").

regarding a victim's prior sexual conduct, and (3) the codification of degrees of rape.

### 1. *The Victim's "Resistance"*

Before the 1975 reforms, Washington defined rape as "an act of sexual intercourse with a person not the wife or husband of the perpetrator committed against the person's will and without the person's consent." Former RCW 9.79.010 (1974) (repealed 1975). Sexual intercourse was considered to be "against the person's will and without the person's consent" if the victim's "resistance [was] forcibly overcome" or "prevented by fear of immediate and great bodily harm . . . ." *Id.* The pre-reform law thus defined rape in terms of the victim's "resistance," making an alleged victim's physical reaction a central issue in every prosecution.

In many jurisdictions, courts interpreted similar statutes to require evidence of the victim's strenuous physical resistance, or at least some "excuse" for nonresistance, in order to sustain a conviction of rape.[18] By contrast, Washington

---

[18] *See, e.g., Johnson v. State*, 118 So. 2d 806, 815 (Fla. App. 1960) ("'resistance or opposition by mere words is not enough; the resistance must be by acts, and . . . reasonably proportionate to the strength and opportunities of the woman . . . and must be shown to persist until the offense is consummated'" (quoting 22 RULING CASE LAW § 10, at 1180 (William M. McKinney ed. 1918))); *Magwire v. People*, 77 Colo. 149, 154, 235 P. 339 (1925) (quoting *Anderson v. State*, 82 Miss. 784, 35 So. 202, 202 (1903) ("mere passive resistance, silent objection, on the part of the assaulted female, is [in]sufficient to

courts rejected this requirement as early as 1910, finding it to be unrealistic and

impractical:

> While it may be expected in such cases from the nature of the crime that the utmost reluctance would be manifested, . . . to hold as a matter of law that such manifestation and resistance are essential to the existence of the crime . . . would be going farther than any well-considered case in criminal law has hitherto gone. . . . Such a test it would be exceedingly difficult, if not impossible, to apply in a given case. A complainant may have exerted herself to the uttermost limit of her strength, and may have continued to do so till the crime was consummated. Still, a jury, sitting coolly in deliberation upon the transaction, could not possibly determine whether or not the limit of her strength had been reached. They could never ascertain to any degree of certainty what effect the excitement and terror may have had upon her physical system.

*State v. Pilegge*, 61 Wash. 264, 268, 112 P. 263 (1910) (quoting *State v. Shields*,

45 Conn. 256, 264 (1877)).

Despite this relatively enlightened case law, the pre-reform statute equated

nonconsent with physical "resistance." Its literal terms thus permitted forced

sexual penetration where the victim's resistance had been too easily overcome to

---

justify a jury in convicting of rape"); *State v. Morrison*, 189 Iowa 1027, 179 N.W. 321, 323 (1920) ("We find no cases where a mere threat, even a threat to kill, unaccompanied by a demonstration of brutal force or dangerous weapon, is held to be a sufficient putting in fear to excuse nonresistance."); *Mills v. United States*, 164 U.S. 644, 648, 17 S. Ct. 210, 41 L. Ed 584 (1897) ("mere nonconsent of a female to intercourse where she is . . . not overcome by numbers or terrified by threats, or in such place and position that resistance would be useless, does not constitute the crime of rape on the part of the man who has connection with her").

constitute nonconsent.[19] A court applying such a statute might instruct a jury that it could not convict on the basis of the complainant's mere reluctance or that the complainant must explain an apparent failure of adequate resistance.[20]

This problem was one of many that motivated the 1975 reforms, and the legislative history of Washington's rape law reform includes extensive testimony on the need to remove "resistance" as an element of the rape crime. [21] As one

---

[19] Under this statutory regime, many defendants appealed their rape convictions on the ground that there had been insufficient evidence that the victim resisted; it should be noted, however, that such appeals were apparently rarely successful. *State v. Pitmon*, 61 Wn.2d 675, 379 P.2d 922 (1963) (no merit in appellant's contention that evidence of resistance was insufficient as a matter of law, since victim's reason for not resisting was a question for the jury); *State v. Baker*, 30 Wn.2d 601, 606-07, 192 P.2d 839 (1948) (jury justified in finding that victim's resistance was prevented by fear); *State v. Meyerkamp*, 82 Wash. 607, 609, 144 P. 942 (1914) ("The resistance spoken of in the statute is not one of the elements of the crime. It is evidence of the want of consent which is an element."); *see, e.g., State v. Thomas*, 9 Wn. App. 160, 163, 510 P.2d 1137 (1973) ("[r]eluctant submission does not imply consent, *Hazel v. State*, 221 Md. 461, 157 A.2d 922 (1960)); nor is the extent of resistance or lack of resistance by the woman other than an item of evidence to be considered . . . along with all other evidence which bears upon willingness and consent").

[20] *See, e.g., State v. Mertz*, 129 Wash. 420, 422, 225 P. 62 (1924) (jury instructed that if the victim "'yield[ed] her consent during any part of the act . . . there is no such opposing will as the law requires to convict on the charge of rape'"); *State v. Williams*, 85 Wash. 253, 254, 147 P. 865 (1915) ("the prosecuting witness resisted [the defendant's] assault with such force as to show a want of consent upon her part [where] [s]he testified that she fought him as much as she was able; that she is afflicted with heart trouble, which prevented further resistance on her part").

[21] *See, e.g.*, Written testimony of Jackie Griswold, *supra* note 17 ("Aside from such relatively unusual situations as where the victim was of unsound mind, or in a stupor, or unconscious of the nature of the act, in the great majority of cases it must be shown that a woman's resistance was forcibly overcome or that her resistance was prevented by fear of immediate and great bodily harm. We thought that fear of a lesser

21

reform advocate put it, "Why should rape victims be required to resist to the extent that they receive additional injuries when robbery victims are considered clever when they don't dispute with the robber[?]" Written Testimony of Jean Marie Brough at 1, Legislative Coordinator for Seattle NOW, to the S. Judiciary Comm. (Aug. 3, 1974) (on proposed S.B. 3173) (on file with Wash. State Archives).

Importantly, however, the champions of reform did not view the removal of the "resistance" element as tantamount to removing the element of nonconsent. On the contrary, they viewed nonconsent as the essence of the rape crime:

> Rape is a crime because of lack of consent. Rape statutes should therefore focus on consent and lack of consent and the amount of violence involved. Consent should not be so qualified as to make additional injury to the victim a necessity for conviction.

*Id.* Indeed, even Wallace Loh's law review article on the 1975 reforms, upon which the *Camara* court ostensibly relied, rejected the argument that the reforms had eliminated the prosecution's duty to prove nonconsent:

> Modern statutory and decisional law do not treat force and nonconsent as separate formal elements. Indeed, if force . . . is not an objective indicator of nonconsent, it is unclear how else the subjective state would be determined.

---

degree of bodily harm might very reasonably prevent resistance. So might threats of future harm, or threats to harm another person, or threats to harm the financial situation or personal relationships of the victim.").

Loh, *supra*, at 552 n.43.[22] Loh's article described the reform statute's "focus . . . on the culpability of the actor" as having important "symbolic value," but not as changing the fact that "nonconsent is the basic substantive element of the crime." *Id.* at 557.

### 2. The Victim's Prior Sexual Conduct

Rather than seeking to remove nonconsent altogether as an element of the crime, rape law reformers were primarily concerned with limiting the type of evidence admissible on that element.[23] Under traditional common law rape statutes, an accuser's sexual history was relevant to the likelihood that she consented to sexual intercourse with the accused.[24] This evidentiary regime reflected two assumptions: first, that evidence of consent on prior occasions was

---

[22] *See also* Loh, *supra*, at 550-52 ("The new Washington rape law, like other reform legislation . . . focuses more on the actor's use or threat of force rather than the victim's conduct as the external criterion of *nonconsent* . . . [but t]he 'common denominator' to the three degrees of rape is *lack of consent.* . . . Only in rape 3 is nonconsent expressly stated as an element of the crime, but absent aggravating factors and forcible compulsion, it is unclear what other objective evidence based upon 'the victim's words or conduct' the state can present as proof." (emphasis added) (footnote omitted) (quoting former RCW 9.79.190(1)(a)).

[23] *Fact Sheet—Bill to Revise Present Rape Law* at 1, S.B. 3173, 43d Leg., 3d Ex. Sess. (Wash. 1974) (on file with Wash. State Archives).

[24] Stacy Futter & Walter R. Mebane, Jr., *The Effects of Rape Law Reform on Rape Case Processing*, 16 BERKELEY WOMEN'S L.J. 72, 75 (2001) ("During trial, a woman's previous sexual history and encounters with the accused and third parties were used in court to determine whether the victim had a 'tendency to consent.'" (citing SUSAN BROWNMILLER, AGAINST OUR WILL: MEN, WOMEN AND RAPE 378 (1975)).

23

probative of a general propensity to willingly engage in sexual contact and second,

that an unchaste woman was not a credible witness.[25]

By the time our legislature undertook the 1975 reforms, Washington case

law had substantially limited the admissibility of an accuser's "sexual misconduct"

or "chastity reputation" in a rape trial. *See State v. Holcomb*, 73 Wash. 652, 132 P.

416 (1913); *see also State v. Geer*, 13 Wn. App. 71, 74, 533 P.2d 389 (1975) ("There is

ample authority in Washington to support the proposition that specific acts of

sexual misconduct on the part of the prosecutrix are inadmissible in rape cases as

such evidence bears on neither the question of consent or credibility." (citing *State

v. Allen*, 66 Wn.2d 641, 404 P.2d 18 (1965))). Nevertheless, reformers noted that

lower courts did not always observe these limits[26] and that the prospect of a

"humiliating and dehumanizing" trial therefore dissuaded many victims from

pressing charges.[27] They argued that evidence of a victim's prior sexual behavior

should be presumed inadmissible, so the prosecution need not move to exclude it.

---

[25] *Fact Sheet, supra* note 23.

[26] Fleck, *supra* note 14, at 3 ("Washington case law on the appellate and supreme court level reflects a favorable attitude to the victim's situation. . . . Although most judges follow case law, some do not and a prosecutor cannot take appeal from a 'not guilty' verdict on the basis of reversible error."); *see also* App.: *Summary of Conflicting Rulings on the Admissibility of Evidence of the Victim's Sexual Misconduct To Affect Credibility or To Evidence Consent*, S.B. 2196, 44th Leg., 2d Ex. Sess. (Wash. 1975) (on file with Wash. State Archives).

[27] Written testimony of Jackie Griswold, *supra* note 17.

Deborah Fleck, Intern for House Judiciary Comm., *Is There a Need for Revision of the Washington State Rape Law?* (1974) (on file with Wash. State Archives).

The 1975 law addressed these problems. That law made "evidence of the victim's past sexual behavior" inadmissible on the issue of credibility. LAWS OF 1975, 1st Ex. Sess., ch. 14, § 2. On the issue of consent, it made the victim's sexual history inadmissible unless (1) "the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and ... the past behavior is material to the issue of consent" or (2) the judge determines at a closed hearing that the evidence "is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant." *Id.* Since 1975, the legislature has expanded these protections. Under current RCW 9A.44.020(3)(a) and (b), a defendant offering evidence of the accuser's sexual history must file a written pretrial motion, accompanied by affidavit. If the court finds that offer of proof sufficient, it must hold a hearing to determine whether any of the proffered evidence may be introduced at trial. RCW 9A.44.020(3)(c), (d).

### 3. The Codification of Degrees of Rape

The most significant substantive change accomplished in the 1975 reforms was probably the division of rape into three degrees. Under the old law, a defendant charged with rape faced a minimum sentence of five years' imprisonment. LAWS OF 1973, 1st Ex. Sess., ch. 154, § 122. The pre-reform statute did not distinguish between the rape crime's "degrees of seriousness,"[28] and reform advocates believed that this led juries to exercise their nullification power where a crime was less than the most brutal attack.[29] Prosecutors apparently shared this belief and were inclined to charge or accept pleas to a lesser offense, such as assault.[30]

---

[28] *Id.* at 2.

[29] *See* Fleck, *supra* note 14, at 15 ("One element all four proposed revisions have in common is the division of rape into degrees with graduated sentences, on the theory that convictions may be achieved for less aggravated rapes which might otherwise be acquittals."); Written testimony of Jean Marie Brough, *supra* note 13, at 2 ("convictions would be more reasonably gained if there was a general lowering of penalties to fit the severity of the crime"); Seattle Women's Comm'n, *supra* note 14, at 6 ("we recommend that there be degrees of rape which will take into account the variety of elements which may enter into the crime, affecting its degree of seriousness, in order to avoid some of the most glaring defects of the plea bargaining system so that rape can be reduced to a lesser degree of what it actually is—rape—rather than to euphemism").

[30] Loh, *supra*, at 558; *see also* Ron Clark, King County Prosecutor's Office, Testimony at Senate Hearing of the Rape Statute, S.B. 2196, 44th Leg., 2d Ex. Sess. (Wash. 1975) (Jan. 21, 1975) (on file with Wash. State Archives) ("third degree rape [which is in] the Women's Commission bill and not the Bar bill would be preferable in that it would identify a sexual intrusion which might be classified under the Bar bill . . . as assault").

The reform statute addressed this problem by codifying three degrees of rape.[31] Under the current statute, first degree rape is characterized by the commission of a simultaneous burglary or kidnapping, the use of a weapon, or the infliction of serious physical injury,[32] and is punishable by a minimum of three years' incarceration.[33] Rape in the second degree encompasses sexual intercourse by forcible compulsion "under circumstances not constituting rape in the first degree,"[34] sexual intercourse with a victim who is physically helpless or mentally incapacitated,[35] and sexual intercourse characterized by the victim's vulnerability and dependence on the perpetrator for certain care or services.[36] Rape in the third degree encompasses sexual intercourse "under circumstances not constituting rape in the first or second degrees," where the victim clearly expressed a lack of consent or the perpetrator made a "threat of substantial unlawful harm" to the victim's "property rights." RCW 9A.44.060(1).

### 4. Michigan's Reform Statute

In developing the 1975 rape law reforms, Washington's legislature relied heavily on Michigan's example. Loh, *supra*, at 552-53. Michigan was one of the

---

[31] LAWS OF 1975, 1st Ex. Sess., ch. 14, § 4, ch. 247 § 2.
[32] RCW 9A.44.040(1).
[33] RCW 9A.44.045.
[34] RCW 9A.44.050(1)(a).
[35] RCW 9A.44.050(1)(b).
[36] RCW 9A.44.050(c)-(e).

first states to reform its rape laws, and its victim protections are considered among the strongest in the nation.[37] The reform statute Michigan enacted in 1974, which replaced the term "rape" with the term "criminal sexual conduct,"[38] eliminated corroboration and resistance requirements and included a highly restrictive rape shield law.[39] Michigan's reform statute also omits any reference to the alleged victim's "consent" in its basic definitions of criminal sexual conduct.[40]

In spite of this omission, Michigan courts have not relieved the prosecution of the burden of proving nonconsent.[41] Rather, they have reasoned that consent

---

[37] David P. Bryden & Sonja Lengnick, *Rape in the Criminal Justice System*, 87 J. CRIM. L. & CRIMINOLOGY 1194, 1225 (1997); Julie Horney & Cassia Spohn, *Rape Law Reform and Instrumental Change in Six Urban Jurisdictions*, 25 LAW & SOC'Y REV. 117, 121-23 (1991); Harriett R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 MINN. L. REV. 763, 765 n.3 (1987).

[38] MICH. COMP. LAWS §§ 750.520a-750.520*l*.

[39] Bryden, *supra* note 37, at 1225.

[40] In Michigan's Criminal Sexual Conduct statute, references to the alleged victim's "consent" appear only in the provision criminalizing sexual contact between a health care professional and his or her patient. The victim's consent is expressly disallowed as a defense where "[t]he actor is a mental health professional and the sexual contact occurs within 2 years after the period in which the victim is his or her client or patient and not his or her spouse." MICH. COMP. LAWS § 750.520e(1)(e).

[41] *See, e.g., People v. Bayer*, 279 Mich. App. 49, 67, 756 N.W.2d 242 ("'Although the statute is silent on the defense of consent, we believe it impliedly comprehends that a willing, noncoerced act of sexual intimacy or intercourse between persons of sufficient age who are neither "mentally defective", . . . "mentally incapacitated", . . . nor "physically helpless", . . . is not criminal sexual conduct.'" (quoting *People v. Khan*, 80 Mich. App. 605, 619 n.5, 264 N.W.2d 360 (1978))), *judgment vacated in part on other grounds*, 482 Mich. 100, 756 N.W.2d 77 (2008).

"negate[s] the elements of force or coercion"[42] and that the prosecution must

therefore *disprove* consent beyond a reasonable doubt wherever the defendant

produces evidence sufficient to put the issue in controversy.[43] To the extent that

Michigan's reform statute appears to remove "nonconsent" as an element of

criminal sexual conduct, courts have recognized that this is only because it is

"redundant" to require the prosecution to prove nonconsent where it is clearly

implied by the use of force (i.e., the perpetrator's use of a weapon or commission

of the rape during a burglary or kidnapping).[44]

---

[42] *People v. Waltonen*, 272 Mich. App. 678, 689, 728 N.W.2d 881 (2006) (citing *People v. Stull*, 127 Mich. App. 14, 19-21, 338 N.W.2d 403 (1983) ("In the context of the [Criminal Sexual Conduct] statutes, consent can be utilized as a defense to negate the elements of force or coercion.")).

[43] *People v. Thompson*, 117 Mich. App. 522, 528-29, 324 N.W.2d 22 (1982). The only exception to this rule occurs where force or coercion is not an element of the crime charged, and the statute does not otherwise expressly provide for the defense of consent. *See, e.g., Waltonen*, 272 Mich. App. at 686-87 & n.2, 689 (rejecting consent defense in the context of statute criminalizing "sexual penetration [that] occurs under circumstances involving the commission of any other felony" (quoting *People v. Pettaway*, 94 Mich. App. 812, 815, 290 N.W.2d 77 (1980))). *Waltonen* criticized *Thompson*'s reasoning, but it did so only because force and coercion are not elements of crime with which the defendant in *Thompson* was charged. *Waltonen*, 272 Mich. App. at 688-89. *Waltonen* did not question *Thompson*'s assertion that, where force or coercion is an element of the charged offense, the prosecution bears the burden of disproving a colorable claim of consent. *Id.*

[44] The authors of Michigan's reform statute recognized that it was "redundant" to require proof of nonconsent where it was clearly implied by the facts of the alleged crime. *Khan*, 80 Mich. App. at 619 n.5 ("'If actual force or threat of force sufficient to meet the "force" requirement can be shown, it is redundant to also require a separate showing of "nonconsent" as part of the case in chief. . . . This is the approach of the reform legislation.'" (quoting Virginia Nordby, *Legal Effects of Proposed Rape Reform*

## 5. *Conclusion*

The *Camara* court correctly noted that Washington's postreform rape laws expressly focus on the perpetrator's rather than the victim's conduct. However, that court incorrectly inferred that this shift in focus had eliminated consent as an element of sexual intercourse or contact by "forcible compulsion." *Camara*, 113 Wn.2d at 640. There is no support for this inference in the legislative history. On the contrary, the history of rape law reform in Washington indicates that reformers viewed nonconsent as the gravamen of the rape crime. The changes these reformers sought and achieved limited the evidence admissible on the question of consent, but did not lessen the prosecution's duty to prove nonconsent beyond a reasonable doubt. Indeed, because consent negates the element of forcible compulsion, they could not have done so without violating the due process guaranties of the Fourteenth Amendment.

III.    *Camara* and *Gregory* are Incorrect and Harmful

Under the doctrine of stare decisis, this court will overturn precedent only if it is incorrect and harmful. *City of Federal Way v. Koenig*, 167 Wn.2d 341, 343, 217 P.3d 1172 (2009). For the reasons outlined above, this court's decisions in

---

*Bills: S.B. 1207 and H.B. 5802*, submitted to the H. Judiciary Comm. on Apr. 23, 1974))); *see also People v. Jansson*, 116 Mich. App. 674, 683, 323 N.W.2d 508 (1982) ("to prove force or coercion as those terms are defined in the statute is to establish that the victim did not consent").

*Camara* and *Gregory* are incorrect. They are also harmful,[45] as they continue to be relied upon by lower courts to the detriment of defendants' due process rights. In the past decade, at least nine appellate decisions have cited *Camara* or *Gregory* for the principle that a defendant charged with sexual intercourse or contact by forcible compulsion may be required to prove by a preponderance that the accuser consented.[46] This requirement is tantamount to a presumption of guilt.

This case presents an opportunity to correct the errors made in *Camara* and *Gregory*. I would take that opportunity and address the defendant's meritorious due process argument.

---

[45] This court has overturned precedent as "harmful" where it "threatens" a fundamental principle of constitutional law. *See State v. Barber*, 170 Wn.2d 854, 871-72, 248 P.3d 494 (2011) (overturning case law that "threatens separation of powers").

[46] *State v. Williams*, noted at 175 Wn. App. 1003 (2013); *State v. W.R.*, noted at 171 Wn. App. 1019 (2012); *State v. Lynch*, noted at 170 Wn. App. 1001; *State v. Mohamed*, noted at 159 Wn. App. 1028 (2011); *State v. Buzzell*, 148 Wn. App. 592, 200 P.3d 287 (2009); *State v. Whitt*, noted at 139 Wn. App. 1082 (2007); *State v. Mott*, noted at 138 Wn. App. 1025 (2007); *State v. Speight*, noted at 136 Wn. App. 1006 (2006); *State v. Bolar*, 118 Wn. App. 490, 78 P.3d 1012 (2003).

Gordon McClod, J.

Wiggim, J.

Madsen, C.J.