FILED
COURT OF APPEALS
DIVISION II

2014 JUN 17 AM 8: 35

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44075-0-II |
| Respondent, | |
| v. | |
| COREAN BARNES, | UNPUBLISHED OPINION |
| Appellant. | |

MAXA, J. – Corean Barnes appeals his jury convictions for two counts of second degree rape, unlawful imprisonment, and first degree burglary with sexual motivation. We hold that the trial court violated Barnes's Sixth Amendment right by instructing the jury, over Barnes's objection, on an affirmative defense of consent to the rape charges. Therefore, we reverse Barnes's second degree rape convictions and remand for retrial. We also hold that: (1) Barnes did not provide a sufficient record or argument to allow us to address whether the trial court erred under the Privacy Act in admitting a redacted version of secret recordings; (2) Barnes's ineffective assistance of counsel claim fails because he cannot show that his counsel's failure to object to the recordings on ER 401, ER 402 and ER 403 grounds prejudiced him; (3) Barnes was not entitled to a jury instruction on the lesser included charge; and (4) the State presented sufficient evidence that Barnes unlawfully entered a third person's property to commit rape.

And we reject Barnes's Statement of Additional Grounds (SAG) arguments. Accordingly, we affirm Barnes's convictions for unlawful imprisonment and first degree burglary.

The State also cross-appeals, asserting that the trial court erred in ruling that the burglary and rape convictions were the same criminal conduct when calculating Barnes's offender score for sentencing purposes. Because we vacate Barnes's second degree rape convictions, we do not reach the State's arguments on cross-appeal.

FACTS

*Rape and Burglary*

Corean Barnes and Christina Russell met in 2007 and dated between 2007 and 2008. They developed a sexual relationship. By August 2008, Russell decided that she did not want to have a further relationship with Barnes, but agreed to drive Barnes on various errands. On August 15, Russell purchased a digital tape recorder and placed it in her purse in order to surreptitiously record her conversations with Barnes.

Later that day, Russell met Barnes at the house of Kenneth Johnson, who had rented a room to Barnes starting in July 2008. According to Russell, Barnes began making unwanted sexual contact with her. Russell testified that Barnes reached through her car window, touched her breasts, and put his hand down her pants. She told him to stop and said she did not want to do that. Barnes then pulled Russell out of the car by her wrists and forcibly carried her to his nearby camper. Russell testified that after a struggle, Barnes put his hand down her pants and penetrated her vagina with his finger. During this time, Russell was trying to break free and was telling Barnes that she did not want to do this. Barnes admitted touching Russell's breasts over her shirt but denied the remainder of Russell's testimony.

Russell also described another incident later that day, after she picked up Barnes and drove him to Johnson's house. She and Barnes entered Johnson's house. Russell testified that they started kissing, but she decided she did not want to continue and attempted to pull away. Barnes then picked her up and carried her into a bedroom. As she attempted to get away, he closed the door and pushed her into a corner. Russell testified that she continued to struggle, but Barnes forced her pants down. Although she kept telling him no, he had intercourse with her before she broke away. Barnes testified that Russell was a willing participant in the intercourse until she decided to stop after about two minutes, at which time Barnes stopped as well.

Russell secretly recorded both incidents. She also recorded lengthy conversations with Barnes around the time of the incidents. Some of the statements involved Barnes's threats to harm Russell.

On August 19, Johnson arrived home to find Barnes inside his house. Johnson objected to him being there without permission and called the police.

The State charged Barnes with two counts of rape in the second degree by forcible compulsion (counts one and two), one count of burglary in the first degree with sexual motivation (count three), and one count of unlawful imprisonment (count four), and two counts of harassment (counts five and six).

*First Trial and Appeal*

A jury convicted Barnes of two counts of second degree rape and one count of unlawful imprisonment.[1] *State v. Barnes*, noted at 157 Wn. App. 1076, 2010 WL 3766574, at *1 (unpublished). Barnes appealed, challenging the trial court's admission of Russell's tape

---

[1] The jury in the first trial did not reach a verdict on the burglary charge.

recordings. *Barnes*, WL 3766574, at *2. The State argued that the entire transcript of Barnes's recorded statements were admissible under the threats and hostage holder exceptions to the Privacy Act. *Barnes*, WL 3766574, at *2. We reversed in an unpublished opinion, holding that it was error to admit the entire transcript of the recordings. *Barnes*, WL 3766574, at *3-4. We noted that a number of Barnes's recorded remarks did not fall under the threats exception. *Barnes*, WL 3766574, at *3. We stated that "the trial court should have conducted a more detailed analysis of the recording before admitting those selected portions that met the threats exception to the Privacy Act." *Barnes*, WL 3766574, at *3. Similarly, we held that recordings made during the period of imprisonment were admissible under the hostage holder exception, but that it was error to admit the entire recording. *Barnes*, WL 3766574, at *3. Accordingly, we remanded for a new trial. *Barnes*, WL 3766574, at *4.

*Second Trial*

Before the second trial, the State and Barnes appeared at a hearing to redact portions of the recordings in order to comply with our decision. The trial court admitted portions of the recordings under both the threats exception and the unlawful requests or demands exception to the Privacy Act, RCW 9.73.030(2). The court played a redacted version of the recordings for the jury.

The trial court approved a jury instruction stating that a person is not guilty of rape if the sexual intercourse was consensual, and that Barnes had the burden of proving that the sexual intercourse was consensual by a preponderance of the evidence. Barnes objected to this affirmative defense instruction, stating that it "forc[ed a] consent instruction on us when it's not requested." Report of Proceedings (RP) at 487. Barnes argued that this instruction placed a

burden on him to prove consent, and that this burden shifting would confuse the jury. The trial court gave this instruction despite Barnes's objection.

A jury convicted Barnes of both counts of rape in the second degree, unlawful imprisonment, and first degree burglary with sexual motivation. During sentencing, the trial court ruled that the second degree rape[2] and first degree burglary convictions were the "same criminal conduct" and, therefore, merged for sentencing purposes. RP at 563 The State objected.

Barnes appeals his convictions. The State cross-appeals the trial court's merging of the second degree rape and first degree burglary convictions for sentencing purposes.

## ANALYSIS

### A. AFFIRMATIVE DEFENSE INSTRUCTION

Barnes argues that the trial court violated his Sixth Amendment right to control his defense by instructing the jury on the affirmative defense of consent over his objections. Barnes asserts that the affirmative defense instruction improperly shifted the burden of proof to the defense to prove that the sexual intercourse was consensual in order to avoid a conviction for second degree rape. We agree based on our Supreme Court's decisions in *State v. Coristine*, 177 Wn.2d 370, 378, 300 P.3d 400 (2013) and *State v. Lynch*, 178 Wn.2d 487, 491, 309 P.3d 482 (2013). We reverse Barnes's convictions on both counts of second degree rape.

---

[2] The trial court did not specify which second degree rape conviction was the same criminal conduct as the first degree burglary. However, we fairly can assume that the trial court was referring to count two, which involved the rape in Johnson's house.

1. Defendant's Right to Control Defense

A criminal defendant has a right under the Sixth Amendment to the United States Constitution to control his or her own defense. *Lynch*, 178 Wn.2d at 491. "Instructing the jury on an affirmative defense over the defendant's objection violates the Sixth Amendment by interfering with the defendant's autonomy to present a defense." *Lynch*, 178 Wn.2d at 492 (quoting *Coristine*, 177 Wn.2d at 375). We review allegations of constitutional violations de novo. *Lynch*, 178 Wn.2d at 491.

In *Coristine*, the State charged the defendant with second degree rape, and was required to prove that the alleged victim lacked the capacity to consent to sexual intercourse because she was physically helpless or mentally incapacitated. 177 Wn.2d at 373 (citing RCW 9A.44.050(1)(b)). The defendant testified that the alleged victim initiated and willingly participated in the sexual intercourse. *Coristine*, 177 Wn.2d at 373-74. The State proposed an instruction on the statutory defense of reasonable belief, under which the defendant had the burden of proving that he reasonably believed the alleged victim was not mentally incapacitated or physically helpless. *Coristine*, 177 Wn.2d at 374. At trial, the defendant argued that his defense was that the State had failed to prove that the alleged victim was incapacitated. *Coristine*, 177 Wn.2d at 374. The trial court gave the affirmative defense instruction over the defendant's objection. *Coristine*, 177 Wn.2d at 374.

Our Supreme Court held that instructing a jury to consider an affirmative defense over the defendant's objection interferes with the defendant's Sixth Amendment right to control his or her defense. *Coristine*, 177 Wn.2d at 378. The court emphasized that the Sixth Amendment places the "important strategic decision" of whether to assert an affirmative defense "squarely in

6

the hands of the defendant, not the prosecutor or the trial court." *Coristine*, 177 Wn.2d at 378. "Imposing a defense on an unwilling defendant impinges on the independent autonomy the accused must have to defend against charges." *Coristine*, 177 Wn.2d at 377.

In *Lynch*, the State charged the defendant with second degree rape based on the victim's allegation of forcible compulsion. 178 Wn.2d at 489. The defendant admitted that he had sexual contact with the alleged victim, but claimed that she consented to his conduct. *Lynch*, 178 Wn.2d at 490. The defendant objected to the State's proposed instruction on the affirmative defense of consent "on the grounds that he had the right to control his defense and because he did not want to bear the burden of proving consent." *Lynch*, 178 Wn.2d at 490. The defendant argued that he presented evidence of consent to create reasonable doubt as to whether the State had proved forcible compulsion. *Lynch*, 178 Wn.2d at 490. The trial court gave the affirmative defense instruction over the defendant's objection. *Lynch*, 178 Wn.2d at 490.

Our Supreme Court held that its decision in *Coristine* was dispositive. *Lynch*, 178 Wn.2d at 492. The court confirmed that giving an affirmative defense instruction over the defendant's objection violated the Sixth Amendment. *Lynch*, 178 Wn.2d at 492. The court stated that a defendant must be allowed to "cast doubt on an element of the State's case" without assuming the burden of proof. *Lynch*, 178 Wn.2d at 493. The court also rejected the State's argument that giving the affirmative defense instruction was justified because the defendant introduced evidence that the alleged victim consented. *Lynch*, 178 Wn.2d at 493-94.

Here, as in *Coristine* and *Lynch*, Barnes objected to instructing the jury on the affirmative defense of consent, which stated that Barnes had to prove by a preponderance of the evidence that his sexual intercourse with Russell was consensual. Barnes objected on the grounds that the

7

instruction (1) would confuse the jury, (2) would relieve the State of proving every element beyond a reasonable doubt, and (3) would require him to pursue an affirmative defense of consent. And the record does not show that Barnes expressly argued an affirmative defense of consent. Instead, he argued that the State failed to meet its burden on either rape charge.

The facts here cannot be distinguished from *Coristine* and *Lynch*. As in *Lynch*, the fact that Barnes testified that Russell consented to sexual contact did not justify giving an affirmative defense instruction. *Lynch*, 178 Wn.2d at 494. Accordingly, we hold that the trial court erred when it instructed the jury on the affirmative defense of consent.

2. Harmless Error Analysis

We conduct a constitutional harmless error analysis to determine whether the trial court's violation of Barnes's Sixth Amendment rights warrants vacating his conviction. *Coristine*, 177 Wn.2d at 379-80. "[I]f trial error is of constitutional magnitude, prejudice is presumed and the State bears the burden of proving it was harmless beyond a reasonable doubt." *Coristine*, 177 Wn.2d at 380.

Here, the State did not argue that giving the affirmative defense instruction over Barnes's objection was harmless beyond a reasonable doubt. In fact, the State does not even argue that the error was harmless. As a result, we hold that the State failed to prove that the error was not harmless beyond a reasonable doubt.

We hold that the trial court violated Barnes's Sixth Amendment right to control his own defense by instructing the jury on an affirmative defense that Barnes did not want to pursue. Because the State has failed to meet its burden of proving this constitutional violation was not

harmless beyond a reasonable doubt, we reverse both of Barnes's second degree rape convictions[3] and remand for a new trial on those charges.

B.    ADMISSIBILITY OF SECRET RECORDINGS

Barnes argues that Russell's secret recording of their conversations violated the Privacy Act, RCW 9.73.030, and therefore under RCW 9.73.050 the trial court erred in allowing the jury to listen to a redacted version of the recordings. The State argues that the recordings were admissible under two exceptions listed in the Privacy Act. First, the Privacy Act exempts communications that "convey threats of extortion, blackmail, bodily harm, or other unlawful requests or demands." RCW 9.73.030(2)(b). Second, it exempts communications by a hostage holder, RCW 9.73.030(2)(d), defined as someone who commits kidnapping or unlawful imprisonment. RCW 70.85.100(2)(a).

In Barnes's first appeal, we stated that selected portions of the recordings may qualify for the threats exception. *Barnes*, WL 3766574, at *3. We also stated that, under the hostage holder exception, the trial court could admit the portion of the recording made during the period of unlawful imprisonment. *Barnes*, WL 3766574, at *3. As a result, at least some portions of the recordings are admissible. Barnes does not dispute this conclusion.

But Barnes did not provide sufficient argument to allow us to evaluate his claim that many of the portions of the recordings were inadmissible. He has made no attempt to designate which portions of the 22 minute redacted version of the recordings are admissible under the

---

[3] The trial court instructed the jury on the affirmative defense only for count 2, and the State argued that the instruction applied only to count 2. But the instruction's language was broad enough that its terms necessarily applied to both counts. Accordingly, we reverse on both counts.

Privacy Act exceptions and which portions are inadmissible. The appellant has the burden of providing an adequate record on appeal. *State v. Tracy*, 158 Wn.2d 683, 691, 147 P.3d 559 (2006); RAP 9.2(b). We need not search for the applicable portions of the record in support of a party's argument. *State v. Brousseau*, 172 Wn.2d 331, 353, 259 P.3d 209 (2011); RAP 10.3(a)(6) (a party must cite "references to relevant parts of the record"). Barnes's failure to provide an adequate record precludes our review. *Stiles v. Kearney*, 168 Wn. App. 250, 259, 277 P.3d 9, *review denied*, 175 Wn.2d 1016, 287 P.3d 11 (2012). Here, because Barnes failed to designate which portions of the redacted version of the recordings he disputes as inadmissible, we are unable to address whether the trial court erred in admitting certain portions under the Privacy Act exceptions.

On remand, the trial court will be free to reevaluate the admissibility of particular portions of the redacted version of the recordings based on Barnes's specific objections.

C.     INEFFECTIVE ASSISTANCE OF COUNSEL

Barnes argues that he received ineffective assistance of counsel because his attorney failed to object to the redacted version of the recordings under ER 401, 402, or 403. We need not address this issue with regard to the second degree rape convictions because, on remand, Barnes's counsel will have the opportunity to object to the recordings on grounds not asserted at trial. But we must consider Barnes's argument with respect to the wrongful imprisonment and first degree burglary convictions because ineffective assistance of counsel could require a new trial on those convictions. We hold that Barnes is not entitled to a reversal of those convictions based on ineffective assistance of counsel.

To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient, and (2) the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). The defendant's failure to show either element ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *Grier*, 171 Wn.2d at 33 Prejudice exists if there is a reasonable probability that, except for counsel's errors, the result of the proceeding would have been different. *Grier*, 171 Wn.2d at 34. We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Even assuming Barnes is correct that defense counsel's performance was deficient for not objecting to the redacted version of the recordings based on ER 401, ER 402, and ER 403, he must establish prejudice by showing that the trial court would have sustained these objections. *Grier*, 171 Wn.2d at 34. This is a difficult task: "The threshold to admit relevant evidence is very low. Even minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). And a trial court has broad discretion in determining the admissibility of evidence under these rules. *State v. Dye*, 178 Wn.2d 541, 547-48, 309 P.3d 1192 (2013).

Barnes relies primarily on *State v. Briejer*, 172 Wn. App. 209, 289 P.3d 698 (2012), to argue that the recordings were not relevant res gestae evidence. But we need not address his res gestae argument because portions of the recordings are directly relevant. To prove second degree rape, the State had to prove that Barnes engaged in sexual intercourse with another person

by forcible compulsion. RCW 9A.44.050(1)(a). "Forcible compulsion" means physical force that overcomes resistance. RCW 9A.44.010(6). Russell's statement on the recordings that Barnes hurt her wrist, supported by her testimony that Barnes grabbed her wrists to pull her out of the car and into the camper is relevant to show that during the first incident Barnes used physical force to overcome Russell's resistance to have sex. The same evidence may be admissible to show unlawful imprisonment. And Barnes's conversations with Russell demanding that she have sex with him, as well as Russell's objections, are relevant to the question of whether during either incident Barnes used forcible compulsion to get what he wanted.

Barnes argues that certain portions of the recordings are irrelevant and inadmissible under ER 402, but once again he has made no attempt to designate which portions of the 22 minute redacted version of the recordings are irrelevant. He makes only general references to the recordings. Similarly, Barnes has presented no argument that specific statements in the recordings are more prejudicial than probative under ER 403. He simply asserts, without analysis or argument, that the trial court would have excluded the recordings under ER 403. As a result, we cannot determine whether the trial court would have sustained relevancy or ER 403 objections to particular portions of the recordings.

Because Barnes fails to show that any deficient performance by his trial counsel prejudiced him, we reject his ineffective assistance of counsel claim with respect to the unlawful imprisonment and first degree burglary convictions.

D.    LESSER INCLUDED OFFENSE INSTRUCTION

The trial court instructed the jury on the crime of second degree rape. Barnes argues that the trial court erred in denying his request for a jury instruction on the lesser included offense of third degree rape. We disagree, and hold that the trial court properly refused to instruct the jury on third degree rape.

A person is guilty of third degree rape if he or she engages in sexual intercourse with another person without consent, "and such lack of consent was clearly expressed by the victim's words or conduct." RCW 9A.44.060(1)(a). A person is guilty of second degree rape when, under circumstances not constituting first degree rape, he or she engages in sexual intercourse with another person "[b]y forcible compulsion." RCW 9A.44.050(1)(a). " 'Forcible compulsion' means physical force which overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to herself or himself." RCW 9A.44.010(6).

When the State charges a defendant with an offense "divided by inferior degrees of a crime, the jury may find the defendant not guilty of the charged offense, but guilty on any lesser degrees of the crime." *State v. Buzzell*, 148 Wn. App. 592, 602, 200 P.3d 287 (2009) (citing RCW 10.61.003, .006). A defendant is entitled to a jury instruction on a lesser included offense if (1) each of the elements of the lesser offense is a necessary element of the offense charged (legal prong); and (2) the evidence in the case supports an inference that the defendant committed the lesser crime to the exclusion of the greater crime (factual prong). *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978); *see State v. Berlin*, 133 Wn.2d 541, 546-47, 947 P.2d 700 (1997). The court must view the evidence in the light most favorable to the

13

party requesting the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

We review de novo the legal prong of a request for a jury instruction on a lesser included offense. *State v. LaPlant*, 157 Wn. App. 685, 687, 239 P.3d 366 (2010) . But we review the factual prong of a request for a jury instruction on a lesser included offense for abuse of discretion. *LaPlant*, 157 Wn. App. at 687.

The State does not dispute that third degree rape is a lesser degree offense of second degree rape; its elements plainly satisfy the legal prong of the *Workman* test. But the State disputes the factual prong. Therefore, the question is whether the evidence supports a finding of third degree rape – i.e., that Barnes had nonconsensual sexual intercourse with Russell without forcible compulsion.

Regarding the first incident, Russell testified that Barnes used forcible compulsion to have nonconsensual sexual intercourse with her. Barnes denied that he had sexual intercourse with Russell at all during this incident. As a result, there is no evidence that would support a finding that in this incident they had sexual contact to which Russell did not consent but Barnes did not use force.

Regarding the second incident, Russell again testified that Barnes used forcible compulsion to have nonconsensual sexual intercourse with her. Barnes testified that the sexual intercourse was consensual. Once again, there is no evidence that would support a finding that in this incident Russell did not consent but Barnes did not use force. Our Supreme Court has held that a defendant is not entitled to an instruction on a lesser offense where "a victim's testimony

14

that she was physically overpowered negates any inference that sexual intercourse was nonconsensual but still unforced." *Buzzell*, 148 Wn. App. at 604 . *Buzzell* applies here.

Russell testified that the sexual contact was through forcible compulsion. According to Barnes's testimony, there was no sexual intercourse in the first incident and the sexual intercourse was consensual in the second incident. Even taking all the evidence in the light most favorable to Barnes, there is no evidence that Barnes made nonconsensual sexual contact without the use of physical force. Therefore, we hold that the trial court properly refused to give an instruction of rape in the third degree.

E.    SUFFICIENT EVIDENCE OF BURGLARY

Barnes also argues that the State failed to prove the elements of first degree burglary with sexual motivation.[4] The statute governing burglary provides that "A person 'enters or remains unlawfully' in or upon premises when he is not then licensed, invited, or otherwise privileged to so enter or remain." Former RCW 9A.52.010(3) (2008). Barnes disputes the State's assertion that he "enter[ed] or remain[ed] unlawfully." Br. of Appellant at 22. He contends that there was no evidence that his presence was unlawful. We hold that the State presented sufficient evidence of first degree burglary with sexual motivation.

Evidence is sufficient to support a conviction if, viewed "in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). When a defendant challenges the sufficiency

---

[4] Although Johnson called the police when he encountered Barnes at his residence on August 19, the State charged Barnes with first degree burglary for his entry onto the property on August 15, and the jury convicted Barnes of first degree burglary with a sexual motivation for his August 15 rape of Russell while on the property. Thus, this issue on appeal is limited to whether Barnes committed burglary on August 15, not August 19.

15

of the evidence in a criminal case, the court draws all reasonable inferences from the evidence . . in favor of the State and . . . most strongly against the defendant. *Kintz*, 169 Wn.2d at 551   A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom. *Kintz*, 169 Wn.2d at 551

Beginning in early July 2008, Johnson rented a room to Barnes, but Barnes was unable to pay rent after the first month and stopped living with Johnson approximately in the "middle of August" 2008. RP at 306. When Barnes left, he "couldn't take all of his things so [Johnson] allowed him to keep some of his things" at the house. RP at 307. Barnes no longer slept at Johnson's house, but Johnson orally permitted him to come onto the property on the condition that Barnes would first contact Johnson, and that Johnson would be at home when Barnes arrived. At trial, Johnson testified that Barnes did not have permission to be in Johnson's house on August 15, 2008, the date of Russell's encounter with Barnes.

Barnes claims that Johnson kept the doors to his house unlocked so that Barnes could enter when he needed to. But Johnson's testimony contradicts Barnes's assertion that Johnson permitted Barnes to enter the property on August 15. Johnson was clear that, after Barnes was unable to pay rent for August, Johnson placed conditions on Barnes's entry onto the property.

Our analysis is whether, "viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Kintz*, 169 Wn.2d at 551. And we "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. J.P.*, 130 Wn. App. 887, 891-92, 125 P.3d 215 (2005). Thus, even if Barnes's testimony could support an alternate scenario in which he lawfully entered Johnson's property, the jury had sufficient evidence to conclude that Johnson

did not permit Barnes to enter and remain on his property on August 15, 2008. Consequently, we hold that sufficient evidence supports the first degree burglary conviction.

F.    STATEMENT OF ADDITIONAL GROUNDS (SAG)

In his SAG, Barnes makes four additional arguments. First, he argues that the trial court violated his due process rights when it admitted the recording. Barnes bases his due process argument on his assertion that the trial court violated the Privacy Act when it admitted the recording. But as discussed above, Barnes did not provide sufficient argument to allow us to evaluate this claim. Barnes's SAG also provides no specific designation of the allegedly inadmissible recorded statements. As a result, we need not address this issue.

Second, Barnes argues that the State failed to present sufficient evidence to prove that he entered Johnson's property with the intent to commit a crime, one of the elements of first degree burglary. He claims that Russell voluntarily entered Johnson's house, which negates the intent element. But Russell testified that, once inside Johnson's house, Barnes forced her to have nonconsensual sex. Based on this evidence, a rational jury could find beyond a reasonable doubt that Barnes intended to commit a crime against Russell on the property. Therefore, we reject Barnes's second argument.

Third, Barnes argues that the trial court abused its discretion when it allowed the State to introduce evidence of Barnes's violation of a no-contact order against a former girlfriend. Barnes apparently refers to defense counsel's statement, outside the presence of the jury: "[I]t appeared that the Court initially allowed evidence of the violation of a no contact order in, but then changed its mind and decided not to allow that in." RP at 142. In this conversation, defense counsel was discussing the history of the trial court's orders. There is no other evidence in the

record that Barnes violated a no-contact order against a former girlfriend, nor any evidence that the jury heard this information. Thus, we reject Barnes's unfounded argument.

Fourth, Barnes argues that the trial court abused its discretion when it allowed the State to introduce Russell's statements regarding assaulting other women. Barnes apparently refers to Russell's testimony that, on one occasion, Barnes said that he wished he could pour gasoline "over all women and watch them burn" and, on another occasion, that he "wish[ed he] could slit [his former girlfriend's] throat and watch the dust pour out." RP at 203. But Barnes did not object to these statements at trial, thereby failing to preserve the issue for appeal. *State v. Embry*, 171 Wn. App. 714, 739, 287 P.3d 648 (2012), *review denied*, 177 Wn.2d 1005, 300 P.3d 416 (2013). To raise an error for the first time on appeal, a defendant must show a manifest error affecting a constitutional right. RAP 2.5(a)(3). Because Barnes fails to show that his claim falls within RAP 2.5(a)(3), we need not consider this issue.

G.     CROSS-APPEAL: SAME CRIMINAL CONDUCT

The State also appeals Barnes's sentence and argues that the trial court erred in ruling that the crimes of first degree burglary and second degree rape constituted the same criminal conduct for sentencing purposes. Because we vacate Barnes's second degree rape convictions, we need not reach the State's cross-appeal.

We reverse and remand for a new trial on both of Barnes's second degree rape convictions. We affirm Barnes's convictions for unlawful imprisonment and first degree burglary.

44075-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

_____
MAXA, J.

We concur:

_____
BJORGEN, A.C.J.

_____
LEE, J.

19