[No. 37140-5-II. Division Two. December 21, 2010.]

*In the Matter of the Detention of* DOUGLAS ALSTEEN, *Appellant.*

*Lila J. Silverstein* (of *Washington Appellate Project*), for appellant.

*Robert M. McKenna, Attorney General*, and *Jana R. Hartman, Assistant*, for respondent.

¶1 VAN DEREN, J. — Douglas Alsteen appeals a jury verdict finding that he is a sexually violent predator who should be civilly committed under the "Sexually Violent Predator Act" (SVPA), chapter 71.09 RCW. He argues that

the jury instructions prejudiced him by improperly focusing on past crimes to which he had stipulated.[1] We affirm.

## FACTS

¶2 Alsteen was incarcerated from 1990 until June 3, 2005, when the State initiated the present sexually violent predator (SVP) civil commitment action against him. When the State filed the SVP petition, Alsteen was serving a 120 month sentence for attempted first degree rape, having been convicted in 1990 of that crime in addition to two counts of second degree assault with sexual motivation. The State filed the SVP petition shortly before Alsteen was scheduled to be released from confinement. His commitment trial began November 5, 2007.

¶3 At trial, in addition to expert witness testimony, the State presented the testimony of two of Alsteen's adjudicated victims, two deputy sheriffs who investigated Alsteen's crimes, and two Department of Corrections (DOC) employees to whom Alsteen had exposed himself while in prison. Through their testimony, the State presented the following evidence regarding Alsteen's criminal history.

---

[1] After filing his opening brief in November 2008, Alsteen moved to stay his appeal pending our Supreme Court's decision in *In re Detention of Moore*, wherein the defendant raised the same due process argument that Alsteen raised in this appeal. 167 Wn.2d 113, 216 P.3d 1015 (2009). We granted Alsteen's motion to stay. After the Supreme Court issued its opinion in October 2009, we lifted the stay and permitted the parties to submit supplemental briefing. *See Moore*, 167 Wn.2d 113. We now consider Alsteen's appeal.

Alsteen originally contended that the SVPA violates due process because it does not limit the prediction of future dangerousness to a reasonably foreseeable time period but, at oral argument, he conceded that our Supreme Court's opinion in *Moore* controls the disposition of his due process argument here. Our Supreme Court determined that chapter 71.09 RCW does not violate due process in not requiring the State to prove future dangerousness in a foreseeable time period because (1) by properly finding a person to be a sexually violent predator, as defined in the SVPA, it is implied that the person is currently dangerous and (2) each detainee is reevaluated annually to determine whether he remains currently dangerous, thus subject to continued civil commitment. *See Moore*, 167 Wn.2d at 125 n.3. Accordingly, we do not address this issue further.

¶4 On May 15, 1986, at the age of 19, Alsteen raped a 10 year old girl.[2] Alsteen took his victim at knifepoint to a shed in a field where he forced her to perform oral sex on him. Alsteen was subsequently arrested and pleaded guilty to second degree rape by forcible compulsion. Alsteen was sentenced to 41 months' confinement.

¶5 On December 4, 1989, Alsteen attacked a female employee at a convenience store. As the employee walked toward her car, Alsteen grabbed her, put a knife to her throat, and started struggling with her. The woman fell to the ground and Alsteen began strangling her. He then cut her neck with the knife until the blade broke. Alsteen fled. Alsteen ultimately pleaded guilty to second degree assault regarding this incident, and later he admitted that he committed the act with sexual motivation. Alsteen was sentenced to 70 months' confinement.

¶6 On or about January 17, 1990, Alsteen attacked a 19 year old woman as she was walking in a park.[3] Alsteen grabbed her from behind, put a knife to her throat, and told her she was coming with him. He then began directing her to the parking lot. The two struggled until the woman was able to break free and run to nearby joggers for help. Alsteen was ultimately arrested for the offense and pleaded guilty to second degree assault and admitted he committed the act with sexual motivation. Alsteen was sentenced to another 70 months' incarceration, to run consecutively with his sentence for the earlier second degree assault.

¶7 On March 14, 1990, approximately two months after he attacked the woman in the park, Alsteen, while still at large, attempted to rape a female hitchhiker. The woman sustained injuries to her face and to her ear when Alsteen struck her with a gun, but she was able to escape from Alsteen's car and run for help. Alsteen was arrested the

---

[2] The victim, who was 33 at the time of the commitment trial, testified to these events.

[3] The victim, who was 36 at the time of the commitment trial, testified to these events.

same day as the incident, and he ultimately pleaded guilty to attempted first degree rape. Alsteen was sentenced to 128 months' confinement, to run concurrent with the two assault sentences.

¶8 DOC personnel also testified that during his subsequent incarceration for the above offenses, Alsteen received numerous infractions in prison for sexual acts in which he exposed himself and masturbated in front of female staff.

¶9 The State also presented Dr. Brian Judd's testimony. Judd is a licensed clinical psychologist who evaluated Alsteen to determine if he suffered from a current mental illness that made him likely to engage in future crimes of sexual violence. As part of his evaluation, Judd reviewed Alsteen's records, including court documents, police reports, psychological reports, and DOC records. Judd testified that, in his professional opinion, Alsteen currently suffered from several mental abnormalities, one being "paraphilia, not otherwise specified, non-consent."[4] Report of Proceedings (RP) at 39. In diagnosing Alsteen's conditions, Judd relied upon the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 2000) paraphilia diagnosis standard.

¶10 Following his interview with Alsteen, Judd also conducted a risk assessment to determine whether Alsteen, as a result of his mental abnormality, was more likely than not to commit a predatory sex offense if he were to be released to the community. The risk assessment involved use of actuarial instruments that listed factors associated with and used to predict sexual reoffense. Judd employed two actuarial instruments in his risk assessment of Alsteen: the "Static-99" and the Sex Offender Risk Assessment Guide. He testified that, based on his diagnoses and risk assessment, Alsteen was likely to engage in predatory acts of sexual violence if not confined to a secure facility.

¶11 Judd also scored Alsteen on the Hare Psychopathy Checklist. This test measures an individual's psychopathy,

---

[4] Judd also diagnosed Alsteen with exhibitionism, antisocial personality disorder, and alcohol dependence.

or level of criminal orientation, and scores in Alsteen's range were statistically associated with a high probability of violent recidivism, including sexual recidivism. Based on his education and experience and his review of the records, Judd testified that it was his professional opinion that Alsteen currently had a mental abnormality that causes him serious difficulty controlling his behavior and made him more likely than not to commit predatory acts of sexual violence if he was not confined in a secure facility.

¶12 Finally, the State also introduced Alsteen's video-taped deposition. In his defense, Alsteen testified and presented the testimony of another clinical psychologist, Dr. Theodore Donaldson.

¶13 On November 14, 2007, the jury unanimously agreed that the State had proved beyond a reasonable doubt that Alsteen was an SVP. The trial court committed Alsteen to the Special Commitment Center and Alsteen appealed.

## ANALYSIS

### JURY INSTRUCTIONS DEFINING SEXUALLY VIOLENT CRIMES

¶14 Alsteen argues that the trial court committed prejudicial error by providing 18 jury instructions describing the predicate crimes to which he had stipulated.[5] He contends

---

[5] Alsteen's briefs do not identify the "18 instructions" about which he complains, but his counsel at trial objected to instructions 13 through 18 and 20 through 31. Br. of Appellant at 14. Also, while now characterizing these instructions as describing his past crimes to which he had stipulated, his trial counsel acknowledged that the challenged instructions referred to " 'crimes of sexual violence' " that Alsteen was " 'likely to commit in the future.' " RP (Nov. 13, 2007) at 161. Counsel stated, "I am amazed that all these instructions can be put in for something that may occur in the future that no one can prove. I think it's highly prejudicial to my client." RP (Nov. 13, 2007) at 161. The instructions defined the following crimes and terminology: "assault in the first degree with sexual motivation" and "assault in the second degree with sexual motivation"; "assault"; "[g]reat bodily harm"; "[s]ubstantial bodily harm"; "[b]odily injury, physical injury, or bodily harm"; "[d]eadly weapon"; "rape first degree . . . by forcible compulsion" and "rape in the second degree by forcible compulsion"; "[f]orcible compulsion"; "[s]exual intercourse"; "child molestation in the first degree" and "child molestation in the second degree"; "[s]exual contact"; "kidnapping in the first degree with sexual motivation" and "kidnapping in the second degree with sexual motivation";

that such instructions improperly focused the jury's attention on his past crimes that his stipulation rendered irrelevant. We disagree.

¶15 Even though an SVP commitment is a civil proceeding, criminal standards apply. *In re Det. of Thorell*, 149 Wn.2d 724, 743-45, 72 P.3d 708 (2003). As for challenges to jury instructions, we generally review a trial court's choice of jury instructions for abuse of discretion. *State v. Douglas*, 128 Wn. App. 555, 561, 116 P.3d 1012 (2005). But we review an alleged error of law in jury instructions de novo. *State v. Willis*, 153 Wn.2d 366, 370, 103 P.3d 1213 (2005). Jury instructions are sufficient if substantial evidence supports them, they allow the parties to argue their theories of the case, and, when read as a whole, they properly inform the jury of the applicable law. *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002). A trial court commits prejudicial error by submitting an issue to the jury that the evidence does not warrant. *Clausing*, 147 Wn.2d at 627.

¶16 Relying on *State v. Todd*, 78 Wn.2d 362, 474 P.2d 542 (1970), Alsteen argues that 18 of the trial court's instructions prejudiced him because they "describe[d his] prior crimes" thereby placing "inordinate focus . . . on [his] past offenses, to which he had stipulated." Br. of Appellant at 14. Alsteen's argument fails on several grounds.

¶17 First, Alsteen's reliance on *Todd* is misplaced. *Todd* addressed instructions in a death penalty case that informed the jury about the role of the Board of Prison Terms and Paroles in the event that the defendant received a sentence of life imprisonment. 78 Wn.2d at 373. *Todd* is too factually dissimilar to offer any guidance here. Moreover, *Todd* was decided decades before enactment of the SVPA, which authorizes the civil commitment proceeding at issue here. *See* former RCW 71.09.010 (LAWS OF 1990, ch. 3, §§ 1001, 1406(3) (effective July 1, 1990)). Accordingly, *Todd* has no application in Alsteen's case.

---

"[a]bduct"; "unlawful imprisonment with sexual motivation"; "[r]estraint"; "intent"; "knowingly"; and "recklessly." Clerk's Papers at 229-34, 236-47.

■ ¶18 Secondly, Alsteen mischaracterizes the instructions at issue as focusing on his past crimes to which he had stipulated. The trial record shows that the State, Alsteen's counsel, and the trial court all viewed the instructions as relating to what the State was required to prove regarding Alsteen's propensity to commit sexually violent crimes *in the future*. In proposing the instructions the State said,

> The reason why I have included those is the way . . . the statute is written . . . the[jury is] to determine whether or not he is likely to commit future crimes of sexual violence, so I have included those crimes of sexual violence that . . . the[jury] might reasonably conclude Mr. Alsteen might commit.

RP (Nov. 7, 2007) at 79. Alsteen's counsel "object[ed] to each and every one of th[e]" instructions defining sexually violent crimes, stating, "The Prosecutor has to prove more-likely-than-not that [Alsteen] will re-offend." RP (Nov. 7, 2007) at 79.

¶19 The State responded, "Your Honor, I have to prove that [Alsteen] is going to commit a crime of sexual violence in the future, the[jury] ha[s] to know what those crimes are." RP (Nov. 7, 2007) at 79-80. The State further explained that the statute defining "sexually violent offenses" (former RCW 71.09.020(15) (2003), currently RCW 71.09.020(17)) "specifically enumerates which crimes constitute crimes of sexual violence," and that "[i]n the past, courts have asked me how I can list these crimes of sexual violence without defining what they are for the jury, so I included [definitional instructions] in this case." RP (Nov. 7, 2007) at 82, 80. Alsteen's counsel later renewed his objection to the instructions regarding future crimes. To the extent Alsteen now asserts that instructions 13 through 18 and 20 through 31 improperly focus on his past crimes, his contentions fail.

¶20 Finally, in providing definitional instructions regarding future crimes of sexual violence, the trial court was merely following the directives in the applicable pattern instructions. *See* 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 365.16, at 519 (5th ed. 2005)

(WPI). Notably, Alsteen does not challenge instruction 9, described elsewhere as a standard "to commit" instruction,[6] or the definitional instructions associated with instruction 9 that stated:

> To establish that Douglas Alsteen is a sexually violent predator, the State must prove each of the following elements beyond a reasonable doubt:
>
> (1) That Douglas Alsteen has been convicted of a crime of sexual violence, namely, Rape in the Second Degree by Forcible Compulsion, Assault in the Second Degree with Sexual Motivation, and/or Attempted Rape in the First Degree;
>
> (2) That Douglas Alsteen suffers from a mental abnormality or personality disorder which causes him serious difficulty in controlling his sexually violent behavior; and
>
> (3) That this mental abnormality or personality disorder makes Douglas Alsteen likely to engage in predatory acts of sexual violence if not confined in a secure facility.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict that Douglas Alsteen is a sexually violent predator.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one or more of these elements, then it will be your duty to return a verdict that Douglas Alsteen is not a sexually violent predator.

Clerk's Papers (CP) at 225. Instruction 4 defined the term "sexual violence" used in instruction 9 as follows:

> "Sexually violent offense" or "harm of a sexually violent nature" includes: Rape in the First Degree, Rape in the Second Degree by Forcible Compulsion, and Child Molestation in the First Degree and Second Degree.
>
> "Sexually violent offense" or "harm of a sexually violent nature" also includes the following crimes if they are commit-

---

[6] This standard "to commit" instruction "requires the fact finder to find a link between a mental abnormality and the likelihood of future acts of sexual violence if not confined in a secure facility." *Thorell*, 149 Wn.2d at 743.

ted with "sexual motivation": Assault in the First Degree and Second Degree, Kidnapping in the First Degree and Second Degree, and Unlawful Imprisonment.

An attempt to commit any of these offenses is also a crime of sexual violence.

CP at 220. Instruction 4 is based on 6A WPI 365.16 "Sexually Violent Predators—Sexual Violence—Definition," which states, " 'Sexual violence' [or] ['harm of a sexually violent nature'] means:  (identify the applicable crimes) ." 6A WPI 365.16, at 519 (alterations in original). The note on use directs:

> Based on the evidence in the case, fill in the blank with the following crimes of sexual violence: (1) those with which the respondent has allegedly been charged or convicted; (2) *those that the respondent is likely to commit in the future*; (3) those that constituted "recent overt acts" (when proof of such an act is necessary). *For predicted future offenses* and "recent overt acts," *the court should also give instructions defining the elements of those crimes, as well as any instructions necessary to define terms used in those instructions.* See the Comment below.

6A WPI 365.16 note on use at 519 (emphasis added). The comment provides in relevant part, "This definition is relevant to three aspects of a sexually violent predatory proceeding. First, the State must prove that the respondent is likely to engage in predatory acts of sexual violence in the future." 6A WPI 365.16 cmt. at 519.

¶21 Each of the 18 challenged instructions defined one of the crimes enumerated in jury instruction 4 or defined terms used in those crimes. This comports with the pattern instructions' directives on use.[7] The pattern instruction's note on use and comment follow the language of former

---

[7] 6A WPI 365.16 cites no cases, and we have found no published opinions interpreting this section of the WPI. But the underlying definitional statute describing sexual violence, currently codified at RCW 71.09.020(17), is part of the statutory scheme authorizing and providing for SVP commitment proceedings and such proceedings, when properly conducted according to the statutory scheme, have been repeatedly approved. *See, e.g., Moore*, 167 Wn.2d at 115; *Thorell*, 149 Wn.2d 724.

RCW 71.09.020(15) (2003). Thus, jury instruction 4 complies with the directives of the WPI, those directives comport with the statute defining sexual violence, *see* former RCW 71.09.020(15) (2003), and the underlying statute is not challenged.

¶22 Alsteen argues only that the 18 instructions at issue, which were given in compliance with the WPI directives, prejudiced him by focusing on his past crimes. But, in fact, the record shows that the instructions were given for the purpose of explaining to the jury the future crimes that Alsteen was likely to commit. For example, the State explained in closing argument:

> Now, you heard an instruction from the Judge yesterday about what "sexually-violent offense" means. This is instruction No. 4. Sexually-violent offense covers the offenses that Mr. Alsteen has been convicted of, *and the crimes that he might commit in the future*, based upon what we know about Mr. Alsteen. That's why there are things up here like unlawful imprisonment. The facts support the fact that he might do that *in the future*. Kidnap[p]ing. The facts tell us, those are the types of crimes Mr. Alsteen is likely to do *in the future* if he's released.

RP (Nov. 14, 2007) at 6-7 (emphasis added).

¶23 Further, the instructions allowed the parties to argue their theories of the case. In closing argument, Alsteen's counsel argued that the State had failed to prove beyond a reasonable doubt that Alsteen was likely to reoffend. The State argued, based on all the evidence, that Alsteen was likely to reoffend if not confined in a secure facility.

¶24 In sum, Alsteen's contention that the instructions prejudicially focused on his past crimes fails under this record. Moreover, as we discussed above, the instructions were an accurate statement of the law and permitted the parties to argue their respective theories of the case to the jury.

¶25 We hold that Alsteen's instructional challenge fails. Thus, we affirm Alsteen's commitment as a sexually violent predator.

ARMSTRONG and HUNT, JJ., concur.

Review denied at 171 Wn.2d 1015 (2011).