# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45488-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JASON SCOTT CAMPBELL, | |
| Appellant. | |

SUTTON, J. — Jason Scott Campbell appeals his convictions for one count of second degree trafficking in stolen property and two counts of bail jumping. He argues that the trial court (1) misstated the "reckless" element of the second degree trafficking jury instruction, (2) erred by instructing the jury on second degree trafficking, (3) violated his right to control his defense by instructing the jury on uncontrollable circumstances, (4) abused its discretion by instructing the jury on missing witnesses, (5) improperly commented on the evidence in answering a jury question, and (6) violated his right to counsel by denying his counsel's motion to withdraw. Holding that (1) the trial court correctly stated the "reckless" element of second degree trafficking in stolen property, (2) Campbell waived his objection to giving the second degree trafficking in stolen property instruction, (3) the trial court did not violate his right to control his defense by instructing the jury on uncontrollable circumstances, (4) the trial court abused its discretion in instructing the jury on missing witnesses, but that error was harmless, (5) the trial court did not

No. 45488-2-II

improperly comment on the evidence, and (6) the trial court did not violate Campbell's right to counsel, we affirm.

FACTS

I. STOLEN TIRES LISTED FOR SALE ON CRAIGSLIST

While browsing Craigslist for automobile parts, Matthew Knowlton found a for-sale advertisement listing four tires and wheels he recognized as his personal property that had been stolen the week before. Knowlton texted the phone number listed on the advertisement and contacted law enforcement. After deputy Sonya Matthews spoke with Knowlton, she went to the address that Knowlton received from the seller, but no one was home when she arrived. She noticed, however, that the house across the street matched the background in the picture of the tires and wheels included in the Craigslist advertisement; she was unable to contact anyone at that house, either.

The next day, Matthews returned to the house that matched the Craigslist picture and spoke with Jason Campbell. Matthews asked Campbell if he knew anything about stolen tires and wheels for sale on Craigslist, and he replied that he did not know anything. Campbell brought out a set of tires and wheels from the garage for Matthews to examine, saying those were the only tires and wheels on the property. Believing those tires were Knowlton's stolen property, Matthews read Campbell the *Miranda*[1] warning.

Campbell continued to deny knowing about the stolen tires and wheels, but said that he could "probably find something out" from his cousin, Michael Smith. Verbatim Report of

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

Proceedings (VRP) (Oct. 8, 2013) at 80. This seemed suspicious to Matthews, so she arrested Campbell. With Campbell secured in her patrol car, Matthews looked closely at the tires and determined that they were not Knowlton's stolen property. Matthews then spoke to Campbell and told him that she "was convinced" he knew more than he was saying because the background of the picture on the Craigslist advertisement matched his property. VRP (Oct. 8, 2013) at 81. Campbell admitted that Smith had brought tires and wheels to his house and Campbell's neighbor had offered to sell them on Craigslist. Campbell told Matthews "he was pretty sure that they were stolen," because Smith had been involved in theft before, but Campbell did not ask where Smith got them. VRP (Oct. 8, 2013) at 81.

The State charged Campbell with one count of second degree trafficking in stolen property. The State later amended the information to increase Campbell's charge to first degree trafficking in stolen property and also charged Campbell with two counts of bail jumping after he failed to appear at two court hearings.

## II. TRIAL

Before trial, defense counsel moved to withdraw. Defense counsel asserted a conflict of interest with Campbell because defense counsel's law partner represented Smith on an unrelated misdemeanor traffic crime. Defense counsel explained that if Smith were called as a witness in Campbell's case defense counsel "might get to sensitive information." VRP (July 22, 2013) at 5. However, he did not have specific information in mind. The trial court did not make a conflict of interest finding and denied defense counsel's motion to withdraw.

3

## A. Second Degree Trafficking in Stolen Property Jury Instruction

The State proposed a jury instruction on second degree trafficking in stolen property as a lesser included offense. The trial court asked if Campbell objected and Campbell replied, "Your Honor, there is objection. . . . [Campbell's] position is it's all or nothing." VRP (Oct. 9, 2013) at 222-23. The trial court instructed the jury on second degree trafficking in stolen property.

The "to convict" instruction provided that Campbell was guilty of second degree trafficking in stolen property if the State proved beyond a reasonable doubt that Campbell (1) "trafficked in stolen property," (2) "acted recklessly," and (3) the acts occurred in the state of Washington. Clerk's Papers (CP) at 41. The instructions defined recklessly as follows: "A person . . . acts recklessly when he or she knows of and disregards a substantial risk that a wrongful act may occur and this disregard is a gross deviation from conduct that a reasonable person would exercise in the same situation." CP at 40.

## B. Uncontrollable Circumstances and Missing Witness Instruction

When Campbell took the stand, defense counsel asked Campbell why he failed to appear at the two court hearings related to his bail jumping charges. The State objected and Campbell provided an offer of proof outside of the jury's presence. Campbell explained that he had arranged for first his friend and then his mother to drive him to court because he did not have a driver's license. In both instances, the person did not arrive. Campbell received a ride from a teacher at a nearby elementary school one time and walked to court the other time, but each day he arrived at court after the hearing had already ended.

The trial court ruled that if Campbell presented this testimony to the jury, the trial court would instruct the jury on the uncontrollable circumstances affirmative defense. Campbell

testified in front of the jury consistent with his offer of proof, and the trial court instructed the jury on uncontrollable circumstances. CP at 46 ("An 'uncontrollable circumstance' means an act of nature such as a flood, earthquake, or fire . . . or an act of man such as an automobile accident."). The trial court also instructed the jury on missing witnesses over Campbell's objection, reasoning that it was "only fair" to the State to do so because Campbell had given testimony about two people who had failed to give him a ride to court but did not call them as witnesses. VRP (Oct. 9, 2013) at 227.

## C. Jury Question

During deliberations, the jury sent a question to the trial court:

Instruction 15[2] says trafficking in stolen property in the second degree is a class C felony. Is trafficking in stolen property in the <u>first</u> degree a class B or class C felony? We're confused because Instruction No. 10[3] says [Campbell] is charged with one count of trafficking in stolen property in the <u>first</u> degree, while the felony complaint and information seem to show that [Campbell] is charged with trafficking in stolen property in the <u>second</u> degree.

CP at 50. The parties discussed the State's original charging document, which reflected a charge of second degree trafficking in stolen property, but was later amended to first degree trafficking in stolen property and that the jurors probably perceived this as conflicting information.

The trial court read aloud its proposed answer: "The original complaint and information was for trafficking in the second degree, the amended information has been filed. The defendant is currently charged with trafficking in the first degree, each of the charges [are] either a Class B

---

[2] Instruction 15 provided that "[t]rafficking in Stolen Property in the Second Degree is a class C felony." CP at 43.

[3] Instruction 10 provided that "[t]he defendant is charged in count one with trafficking in stolen property in the first degree." CP at 38.

or Class C felony." VRP (Oct. 9, 2013) at 267-68. The trial court believed that its answer helped "clarify the confusion they see with one exhibit which had the original complaint and information." VRP (Oct. 9, 2013) at 268. Campbell stated in response, "Your Honor, I'm proposing that we just indicate to them that they have the law and the instructions as given to them and they should decide." VRP (Oct. 9, 2013) at 269. The trial court replied that Campbell's suggestion was "the easy way out, but I don't feel comfortable when [the jurors] raise a specific issue that is legal in nature as opposed to potential comment on the evidence." VRP (Oct. 9, 2013) at 269. The trial court answered the jury's question as it had proposed.

The jury did not reach a verdict on first degree trafficking in stolen property, but found Campbell guilty of second degree trafficking and both counts of bail jumping. Campbell appeals.

## ANALYSIS

### I. RECKLESSNESS JURY INSTRUCTION

Campbell argues that the jury instruction defining recklessness misstated an element of second degree trafficking because it did not require the jury to find that Campbell acted recklessly in relation to a specific crime.[4] We disagree.

---

[4] The State argues that we should not review this claim of error because Campbell did not preserve it with an adequate objection. Because it is reversible error to give the jury an instruction that relieves the State of its burden to prove every element beyond a reasonable doubt, Campbell may challenge the jury instruction for the first time on appeal. *State v. Peters*, 163 Wn. App. 836, 847, 261 P.3d 199 (2011). Thus, we do not address the State's argument that Campbell failed to properly object.

Because the to-convict jury instruction given by the court was correct, it is not necessary to address Campbell's other arguments attacking this jury instruction.

We review legal sufficiency of jury instructions de novo. *State v. Walker*, 182 Wn.2d 463, 481, 341 P.3d 976 (2015), *petition for cert. filed*, (Apr. 22, 2015). Jury instructions are insufficient if they relieve the State of its burden to prove every essential element of the charged crime. *Walker*, 182 Wn.2d at 481. If a to-convict instruction includes every element that the State must prove beyond a reasonable doubt, the generic instruction defining recklessness is sufficient. *State v. Johnson*, 180 Wn.2d 295, 306-07, 325 P.3d 135 (2014).[5] The to-convict instruction in this case satisfies the rule in *Johnson*.

A person commits second degree trafficking in stolen property when he or she "recklessly traffics in stolen property."[6] RCW 9A.82.055(1). Here, the trial court instructed the jury that a person acts "recklessly" when he or she knows of and disregards "a substantial risk that a wrongful act may occur." CP at 40. The to-convict instruction told the jury that it must find Campbell guilty if it found that (1) Campbell trafficked in stolen property, (2) he acted recklessly, and (3) the acts occurred in the state of Washington. Under these circumstances, the specific act of trafficking in stolen property was the only element to which the term "recklessly" could have referred. As in *Johnson*, the to-convict instruction accurately informed the jury of every element necessary to find Campbell culpable of second degree trafficking in stolen property. *Johnson*, 180 Wn.2d at 306. Thus, the jury instructions did not relieve the State of its burden of proof.

---

[5] Prior opinions from our Courts of Appeal have held that a recklessness instruction must mention the specific crime that the defendant disregarded a substantial risk of occurring, rather than merely a "wrongful act" occurring. *Peters*, 163 Wn. App. at 847; *State v. Harris*, 164 Wn. App. 377, 383, 263 P.3d 1276 (2011).

[6] A person acts recklessly when he or she "knows of and disregards a substantial risk that a wrongful act may occur" and "disregard of such substantial risk is a gross deviation" from how a reasonable person would act in the same situation. RCW 9A.08.010(1)(c).

## II. Second Degree Trafficking in Stolen Property Jury Instruction

Campbell next argues that the trial court erred in instructing the jury on second degree trafficking because the evidence at trial did not support a jury finding that he acted recklessly as is required to convict him of second degree trafficking, a lesser included offense. Because we hold that Campbell did not properly preserve the error, we do not reach this issue.

We may decline to review a claim of error that was not raised in the trial court, unless the error was manifest and affected a constitutional right. RAP 2.5(a). The purpose of this rule is to allow the opposing party to respond to the claim of error and give the trial court the opportunity to correct it. *State v. Davis*, 175 Wn.2d 287, 344, 290 P.3d 43 (2012), *cert. denied*, 134 S. Ct. 62 (2013). Campbell's objection, that his case was "all or nothing," did not advise the trial court of the basis on which he now claims error: insufficient evidence to support the instruction. VRP (Oct. 9, 2013) at 223. Campbell's objection did not provide the State an opportunity to respond to the claim of insufficient evidence or allow the trial court to consider it. Therefore, Campbell did not preserve the error for review on appeal.

Furthermore, Campbell cannot show that the error is a "manifest error affecting a constitutional right." RAP 2.5(a). A jury may find a criminal defendant guilty of any inferior degree of the charged crime. RCW 10.61.003. RCW 10.61.003 provides criminal defendants with sufficient constitutional notice of the crimes of which they may be convicted. *State v. Berlin*, 133 Wn.2d 541, 545, 947 P.2d 700 (1997). Thus, the trial court's decision to instruct the jury on second degree trafficking in stolen property is not of constitutional magnitude. Because Campbell raises this claim of error for the first time on appeal, we decline to review its merits.

### III. Uncontrollable Circumstances Affirmative Defense

Campbell next argues that the trial court violated his right to control his defense when it instructed the jury on uncontrollable circumstances over his objection.[7] We disagree.

An accused has the right to control his or her defense under the Sixth Amendment. *State v. Lynch*, 178 Wn.2d 487, 491, 309 P.3d 482 (2013). Instructing the jury on an affirmative defense over the defendant's objection violates the Sixth Amendment when imposing the affirmative defense infringes upon the defendant's "'independent autonomy [he or she] must have to defend against charges.'" *Lynch*, 178 Wn.2d at 493 (quoting *State v. Coristine*, 177 Wn.2d 370, 377, 300 P.3d 400 (2013)). We review constitutional violations de novo. *Lynch*, 178 Wn.2d at 491.

Jury instructions must properly inform the jury of the law, allow each party to argue its case theory, and may not mislead the jury. *State v. McCreven*, 170 Wn. App. 444, 462, 284 P.3d 793 (2012). A jury instruction that fails to make the applicable legal standard manifestly apparent to the average juror amounts to a constitutional error that is presumed prejudicial. *McCreven*, 170 Wn. App. at 462.

When Campbell took the stand, defense counsel asked Campbell why he had not arrived at his court hearings on time. The State objected and, in Campbell's offer of proof, he explained that he arrived late on both days because his friend and mother had failed to give him a ride as

---

[7] Campbell argues that the trial court's instruction on uncontrollable circumstances also violated his right to counsel. Because we hold that the trial court did not err, we do not address Campbell's Sixth Amendment argument on this issue.

they had agreed. The trial court ruled that Campbell could testify to this information, but if Campbell did testify as to his reasons for not being at his court hearings, the jury would be instructed on the only defense to bail jumping: uncontrollable circumstances. Campbell chose to testify as he wished with full knowledge that the trial court would instruct the jury as it informed Campbell it would. Under these facts, the trial court did not infringe upon Campbell's independent dignity and autonomy to control his defense. *Lynch*, 178 Wn.2d at 493.

Furthermore, once Campbell elected to testify as he wished, the trial court was *required* to instruct the jury on uncontrollable circumstances so as to not allow the jury to be misled. *McCreven*, 170 Wn. App. at 462. Without the affirmative defense instruction, the jury instruction on bail jumping would have misled the jury to believe that Campbell's reason for not appearing excused his absence. The trial court did not violate Campbell's right to control his defense by instructing the jury on uncontrollable circumstances.

## IV. MISSING WITNESS JURY INSTRUCTION

Campbell argues that the trial court abused its discretion in giving a missing witness jury instruction. The missing witness jury instruction permitted the jury to infer that Campbell's friend's and mother's testimony, the two people who were supposed to drive him to his court hearings, would have been damaging because if their testimony would have been favorable to him, he would have called them as witnesses.[8] The trial court abused its discretion in giving this instruction, but the error was harmless.

---

[8] The missing witness instruction provided that:

> If a person who could have been a witness at the trial is not called to testify, you may be able to infer that the person's testimony would have been unfavorable to a party in the case. You may draw this inference only if you find that:

No. 45488-2-II

We review the trial court's decision to give a specific instruction for abuse of discretion. *In re Det. of Alsteen*, 159 Wn. App. 93, 99, 244 P.3d 991 (2010). A trial court abuses its discretion when it applies an incorrect legal analysis. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). Jury instructions are sufficient if substantial evidence supports them, they allow the parties to argue their theories of the case, and they properly inform the jury of the applicable law. *State v. Clausing*, 147 Wn.2d 620, 626, 56 P.3d 550 (2002).

Here, Campbell does not argue that the language of the missing witness instruction was legally incorrect; rather, he argues that the trial court incorrectly gave the missing witness instruction because the facts did not permit application of the missing witness doctrine. The missing witness doctrine allows the jury to infer that a witness's testimony would have been damaging where it would be natural for a party to produce a witness because the facts known to the witness would be favorable but that party fails to do so. *State v. Blair*, 117 Wn.2d 479, 488, 816 P.2d 718 (1991). This inference is not permitted, however, if (1) the testimony would be cumulative or unimportant, (2) the witness's absence is satisfactorily explained, or (3) the witness is equally available to both parties. *State v. Montgomery*, 163 Wn.2d 577, 598-99, 183 P.3d 267

---

(1) The witness is within the control of, or peculiarly available to, that party;
(2) The issue on which the person could have testified is an issue of fundamental importance, rather than one that is trivial or insignificant;
(3) As a matter of reasonable probability, it appears naturally in the interest of that party to call the person as a witness;
(4) There is no satisfactory explanation of why the party did not call the person as a witness; and
(5) The inference is reasonable in light of all the circumstances.

CP at 47.

11

(2008). Where the inference is permitted, the party against whom the rule operates has the burden of explaining the witness's absence. *Blair*, 117 Wn.2d at 489.

Campbell testified that he did not appear in court after Campbell's friend and mother failed to give him a ride. Because neither Campbell's friend nor his mother testified, the trial court gave a missing witness instruction. However, the State did not have an opportunity to interview Campbell before trial due to his Fifth Amendment right against self-incrimination. Thus, the State did not have equal access to subpoena Campbell's friend and mother because it did not know the witnesses' names until Campbell testified.

But these witnesses were immaterial, and according to the State, Campbell's testimony about his rides was irrelevant to the bail jumping charge. If Campbell's testimony was not a defense to bail jumping, neither could his friend's nor his mother's testimony operate as a defense. The State does not explain how these witnesses would have been helpful to Campbell's defense and instead relies on its argument that the witnesses were not equally available. The missing witness doctrine, however, does not employ a factor test as the State's argument suggests; the party asserting the missing witness doctrine must satisfy all three prongs of the test stated in *Blair*. *Blair*, 117 Wn.2d at 488-89; *Montgomery*, 163 Wn.2d at 598-99. Because Campbell testified to the same events that his friend and mother would have presumably testified to as well, their testimony would have been both cumulative to Campbell's testimony and immaterial to Campbell's defense to the bail jumping charges. Thus, the trial court abused its discretion by instructing the jury on missing witnesses.

Although the trial court abused its discretion in giving the missing witness jury instruction, any error was harmless. An erroneous instruction is harmless if, based on the facts of the particular

case, it appears beyond a reasonable doubt that the error did not contribute to the jury's verdict. *Montgomery*, 163 Wn.2d at 600. To prove bail jumping, the State must have proved that (1) Campbell knew about the requirement to appear and (2) he failed to do so. RCW 9A.76.170(1). The trial court instructed the jury that it must find both of these elements of the crime beyond a reasonable doubt and Campbell admitted that he knew he was required to come to court on a particular date and that he failed to do so.[9] Even if the trial court had not given the missing witness instruction, there is no likelihood that it contributed to the jury's verdict. Any error in giving the missing witness instruction was harmless.

## V. TRIAL COURT'S RESPONSE TO JURY QUESTION

Campbell argues that the trial court improperly commented on the evidence in its answer to the jury's question. We disagree.

### A. Campbell Properly Objected

The State argues that Campbell did not preserve this issue for appeal because he did not properly object, citing *State v. Cordero*, 170 Wn. App. 351, 371, 284 P.3d 773 (2012). We disagree.

---

[9] The to convict instruction required the jury to find four elements beyond a reasonable doubt:

    (1) That on or about January 28th, 2013, the defendant failed to appear before a court;

    (2) That the defendant was charged with a class B or class C felony;

    (3) That the defendant had been released by court order with knowledge of the requirement of a subsequent personal appearance before that court; and

    (4) That the acts occurred in the State of Washington.

CP at 44. Elements two and four were undisputed at trial.

In *Cordero*, the defendant did not preserve error when he failed to specifically object to the trial court's proposed answer and, instead, proposed a different answer. *Cordero*, 170 Wn. App. at 371. The record here is distinguishable from *Cordero* because the context of Campbell's discussion with the trial court and the State makes it clear that the trial court understood the nature of Campbell's objection.

After the trial court read aloud its proposed answer to the jury's question, the State said, "I agree. That's fine." VRP (Oct. 9, 2013) at 268. Campbell immediately replied, "Well, Your Honor, you read them the charges against the defendant." VRP (Oct. 9, 2013) at 268. The trial court and the parties then discussed the jury's confusion and the evidence presented to the jury. During this colloquy, the trial court twice acknowledged that the basis of Campbell's objection was to prevent a comment on the evidence. Campbell then proposed an answer at the trial court's urging. VRP (Oct. 9, 2013) at 269 ("The Court: [Defense counsel], any association with you? [Defense counsel]: Your Honor, I'm proposing that we just indicate to them that they have the law and the instructions as given to them and they should decide.").

Campbell's colloquy with the trial court made it clear that he disagreed with the trial court's answer to the jury's question and that the trial court understood the reason for his objection. Campbell properly objected.

### B. Trial Court Did Not Comment on Evidence

Campbell argues that the trial court commented on the evidence by telling the jury that the second degree trafficking in stolen property charge against Campbell had been amended to first degree trafficking in stolen property and explaining that first degree trafficking was a class B felony. We hold that the trial court did not improperly comment on the evidence.

The trial court may give the jury additional instructions on a point of law according to its discretion. *State v. Kindell*, 181 Wn. App. 844, 850, 326 P.3d 876 (2014). The trial court cannot answer jury questions in a way that relieves the State of its burden of proof or add a new legal theory that the parties did not have an opportunity to argue. *Kindell*, 181 Wn. App. at 850; *State v. Becklin*, 163 Wn.2d 519, 529, 182 P.3d 944 (2008). We review the legal accuracy of the trial court's jury instructions de novo. *Kindell*, 181 Wn. App. at 850.

The to-convict instruction for the first count of bail jumping in this case required the State to prove that Campbell was charged with a "class B or class C felony" at the time he did not appear for his court hearing.[10] CP at 44. The jury's original instructions did not inform the jury whether first degree trafficking in stolen property, Campbell's charge at trial, was a class B or class C felony; the jury was instructed only that *second* degree trafficking in stolen property, Campbell's charge when he missed two court hearings, was a class C felony. The trial court admitted as an exhibit the State's original felony complaint and information that listed Campbell's original charge of second degree trafficking in stolen property, but the jury was not given information that this charge had been *amended* to first degree trafficking in stolen property. In its answer to the jury's inquiry about this discrepancy, the trial court told the jury that an amended information had been filed and Campbell was currently charged with first degree trafficking in stolen property.

This answer was not a comment on the evidence because the trial court's answer to the jury merely clarified confusion on a procedural issue. The State presented evidence at trial that Campbell was charged with second degree trafficking and that he failed to appear at two court

---

[10] In contrast, the to-convict instruction for the second count of bail jumping required proof that Campbell was charged with a class C felony at the time he failed to appear.

hearings. The trial court instructed the jury that Campbell's charge at the time he failed to appear was a class C felony, but the to-convict instruction for Campbell's first count of bail jumping stated the elements for first degree trafficking in stolen property. Informing the jury of the amendment of Campbell's charge from second to first degree trafficking in stolen property did not relieve the State of its burden to prove each element of the crimes charged nor did it add a new legal theory the parties did not have an opportunity to argue. Thus, the fact that Campbell's charge was amended does not amount to a new theory of culpability and it did not change any element that the State was required to prove beyond a reasonable doubt. The trial court's answer was not an improper comment on the evidence.

## VI. DEFENSE COUNSEL'S MOTION TO WITHDRAW

Lastly, Campbell argues that the trial court improperly denied his counsel's motion to withdraw because defense counsel's duty of loyalty was likely to be materially limited due to defense counsel's firm's responsibilities to Smith, who was a potential defense witness. The trial court properly denied defense counsel's motion to withdraw because he did not present an actual conflict of interest.

The Sixth Amendment guarantees the right to effective assistance of counsel. U.S. CONST. amend. VI; *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 348, 325 P.3d 142 (2014). This right includes the right to conflict-free counsel at all critical stages of prosecution. *Gomez*, 180 Wn.2d at 348. We review de novo whether a conflict of interest precludes continued representation. *Gomez*, 180 Wn.2d at 347.

The trial court has a duty to investigate potential conflicts of interest when it knows or reasonably should know of a conflict of interest between counsel and his or her client. *State v.*

*Regan*, 143 Wn. App. 419, 425-26, 177 P.3d 783 (2008). When a defendant or attorney alerts the trial court to a conflict, the trial court must appoint substitute counsel or take "adequate steps" to determine whether the risk of a conflict of interest is too remote to require substitute counsel. *Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S. Ct. 1173, 55 L. Ed. 2d 426 (1978). On appeal, a defendant must demonstrate that an actual conflict of interest adversely affected trial counsel's performance. *State v. Dhaliwal*, 150 Wn.2d 559, 570, 79 P.3d 432 (2003). A defendant must show how concurrent representation affects trial counsel's performance. *Dhaliwal*, 150 Wn.2d at 573. If two matters in an alleged conflict are not substantially related, we will not presume that confidential information was disclosed requiring disqualification. *State v. Hunsaker*, 74 Wn. App. 38, 47, 873 P.2d 540 (1994).

Here, defense counsel moved to withdraw, claiming a conflict of interest, because his firm represented Smith on a factually unrelated misdemeanor traffic offense. The trial court inquired into defense counsel's asserted conflict of interest. Defense counsel told the trial court that he did not have any information that would lead to uncovering sensitive information from Smith. Thus, the trial court found the record insufficient to find a conflict. The trial court did not err in denying defense counsel's motion to withdraw.

We hold that (1) the trial court correctly stated the "reckless" element of second degree trafficking in stolen property, (2) Campbell waived his objection to giving the second degree trafficking in stolen property instruction, (3) the trial court did not violate his right to control his defense by instructing the jury on uncontrollable circumstances, (4) the trial court abused its discretion in instructing the jury on missing witnesses, but that error was harmless, (5) the trial

No. 45488-2-II

court did not improperly comment on the evidence, and (6) the trial court did not violate Campbell's right to counsel, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, A.C.J.

LEE, J.